**RJF INTERNATIONAL CORPORATION,** Defendant/Appellant,

v.

**B.F. GOODRICH COMPANY,** Defendant/Respondent.

No. 64601.

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 2, 1994.

Samuel B. Murphy Jr., Clayton, for appellant.

Richard B. Scherrer, Armstrong, Teasdale, Schlafly, Davis & Dicus, St. Louis, for respondent.

SIMON, Presiding Judge.

Appellant, RJF International Corp. (RJF), appeals the granting of summary judgment in favor of B.F. Goodrich Company (BFG) on

RJF's cross claim for contribution or indemnity and BFG's cross claim for contribution or indemnity. Respondent has filed a motion for attorney's fees and costs on appeal.

On appeal, appellant contends that the trial court erred in granting BFG's motion for summary judgment because: (1) the motion failed to comply with Rule 74.04(c); and (2) BFG's motion for summary judgment and its references failed to demonstrate that there were no genuine issues of material fact and that BFG was entitled to judgment as a matter of law. Appellant further contends that respondent's motion for attorney's fees and costs on appeal should be denied because the indemnity provision of the agreement does not provide that BFG is entitled to payment of its attorney's fees and costs incurred in connection with an appeal seeking an interpretation of the terms of the agreement. We affirm the judgment of the trial court and grant respondent's motion for attorney's fees and costs.

John Kitzman III (decedent), was employed by Commonwealth Construction Company (Commonwealth), and was in the process of installing an underground gasoline storage tank. On February 12, 1990, decedent was in the excavation installing a "Fuel Guard Membrane Liner" (liner) manufactured by RJF. The liner is a large sheet of plastic material which is spread on the bottom of the tank excavation and which extends part way up the walls of the excavation. The purpose of the liner is to detect gasoline leaks and channel them from the tank to "monitoring wells" located adjacent to the tank. Installation of the liner required driving metal stakes through the liner and into the excavation walls for the purpose of holding up the liner walls until the hole was refilled. The excavation walls were vertical and not shored or braced in any way. The decedent was killed when one of the side walls caved in.

BFG began manufacturing and marketing liners in 1987. Since 1984, Richard J. Fasenmyer had been employed by BFG as the President of the Fabricated Polymers Division of BFG. The liner operation, a sub-unit of this division, manufactured and sold the liners. In July, 1988, Fasenmyer became interested in buying the division and over subsequent months, extensive negotiations concerning indemnification issues took place. Fasenmyer formed RJF and RJF and BFG executed an Agreement of Purchase and Sale for Certain Liabilities of the Fabricated Polymers Division of the B.F. Goodrich Company (agreement) on September 30, 1988. The agreement contained the terms of BFG's sale of certain assets of the division to RJF. Fasenmyer remained the general manager and most senior person in charge of operations of the division, up until the signing of the agreement. After the sale, there were no changes in the manufacture, sale, or marketing of the liner. RJF continued to distribute the liner instructional information that had previously been distributed by BFG, including written instructions, pamphlets, sketches and a videotape.

There is no evidence that RJF provided Commonwealth with any instructions relating to the installation of the specific liner involved in this litigation. The employees of Commonwealth relied on a videotape and instructions supplied by BFG in 1988 for installation of another liner, unrelated to this litigation. The videotape was prepared by an employee of BFG in 1987.

On March 22, 1990, Mrs. Kitzman (plaintiff), the surviving spouse of decedent, filed a wrongful death action in the Circuit Court of the City of St. Louis against BFG and RJF. In her original petition, plaintiff pleaded a product liability claim against BFG. On July 17, 1990, plaintiff filed a second amended petition adding a product liability claim against RJF.

Subsequently, in plaintiff's sixth amended petition, she pled a product liability claim against RJF and a claim of negligence against BFG. Plaintiff alleged that RJF: (1) sold a product which "was not reasonably safe for its intended use", in that the liner's installation instructions were inadequate; and (2) failed to warn of hazards attendant to installation and that the prescribed mode of installation was unsafe and violated certain safety regulations promulgated by OSHA. Plaintiff further alleged that BFG was negligent: (1) in issuing inadequate instructions that failed to warn of the hazards of installa-

tion; (2) by describing a mode of installation which was contrary to Federal and State laws and regulations; and (3) by developing and distributing a video tape that failed to warn of the hazards attendant to the liner's installation.

RJF filed an amended cross claim against BFG based upon the fact that instructions, relied upon by decedent's employer, were negligently created and distributed by BFG and therefore BFG should be found liable according to its relative fault.

BFG filed a cross claim against RJF claiming that: (1) BFG did not manufacture or sell the liner in question and any fault with respect to the manufacture or sale should be assessed against RJF and BFG is entitled to contribution and attorney's fees and costs from RJF arising out of its defense of plaintiff's claims (Count I); and (2) § 2.3 of the agreement requires RJF to indemnify BFG (Count II).

Based upon the Assumed Liabilities provision, § 2.3(g), of the agreement, BFG filed a motion for summary judgment on RJF's cross claim and a motion for summary judgment on BFG's cross claim, claiming that as a matter of law, RJF is required to indemnify BFG. Section 2.3(g) of the agreement provides in pertinent part:

> 2.3 *Assumed Liabilities.* Buyer or Extrusion (as provided for in Section 7.14 hereof) shall perform, pay and discharge and hereby assumes and indemnifies and holds harmless Seller from and against the following, and only the following, obligations and liabilities of Seller associated with the Division (collectively, the "Assumed Liabilities"): ...
>
> (g) All liabilities and obligations arising from the manufacture, sale, service or repair of the products or the inventory, the use of the Acquired Assets, performance of the Acquired Commitments, and the operation of the Facilities and Acquired Businesses by Buyer on or after the Closing Date.

Section 7.14 provides:

> 7.14 *Allocation of Acquired Assets and Assumed Liabilities.* Buyer and Extrusion hereby agree that the Acquired As-

sets and Assumed Liabilities shall be allocated between them in accordance with Exhibit 7.14 hereto. Buyer and Extrusion jointly and severally further agree to indemnify and hold harmless Seller from and against (i) any and all claims, liabilities, damages, losses, costs and expenses, including, without limitation, reasonable counsel fees and disbursements, (ii) any imposition or attempted imposition by a third party upon Seller of any liability or obligation of Buyer or Extrusion, and (iii) each and every failure or breach of any representation, warranty, covenant and indemnification by either Buyer or Extrusion, in each instance to the extent resulting from the above-referenced allocation of the Acquired Assets and Assumed Liabilities by Buyer or Extrusion.

In its July 27, 1992 order, the trial court granted summary judgment in favor of BFG on its cross claim against RJF for contribution and indemnity and RJF's cross claim for contribution and indemnity against BFG. The trial court granted leave to BFG to offer evidence as to its attorney's fees and costs upon later application.

In its July 22, 1993, findings of fact and conclusions of law, order, and judgment, the trial court found that: (1) a contract of indemnity exists between RJF and BFG which obligates RJF to indemnify BFG; (2) BFG has incurred fees and expenses as a result of the underlying claim for wrongful death; and (3) pursuant to the contract of indemnity, RJF is obligated to indemnify BFG for the fees and costs incurred.

Further, the trial court approved a settlement of plaintiff's claims against defendants upon payment of $800,000.00 by RJF. BFG made no contribution toward the settlement. The trial court further awarded BFG $51,-546.00 against RJF for attorney's fees and costs incurred by BFG.

In its first point, appellant contends that the trial court erred in granting BFG's motion for summary judgment because the motion failed to comply with Rule 74.04(c) in that it did not state with particularity the grounds for its assertion that RJF's claim for contribution or indemnity is barred as a matter of law.

Rule 74.04(c) provides in pertinent part: "[t]he Motion shall state with particularity the grounds therefore and shall be served at least (10) days before the fixed time for the hearing."

When a motion for summary judgment is filed, the burden is on the non-moving party to allege that the motion is premature or unfounded and/or to challenge the particularity of the motion, and to raise such problems with the trial court. Rule 74.04(c); *ITT Commercial Finance v. Mid-Am Marine*, 854 S.W.2d 371, 381[14–17] (Mo. banc 1993). Missouri courts have consistently held that a non-movant's failure to challenge the particularity of a pleading at the trial level results in a waiver of the argument. See *Clark v. Olson*, 726 S.W.2d 718, 719[2] (Mo. banc 1987) (vendors waived their objection to purchaser's failure to plead fraud with particularity, by failing to file motion for more definite statement).

RJF did not challenge the particularity of BFG's motion for summary judgment in the trial court and now raises the issue on appeal. Thus, RJF failed to timely challenge the particularity requirement of BFG's motion for summary judgment. Point denied.

In its second point, appellant contends that summary judgment was improper because there were genuine issues of material fact and respondent was not entitled to judgment as a matter of law because: (1) the record establishes that Commonwealth relied on a videotape prepared by BFG which shows an installation in an excavation with straight sidewalls and BFG's employee personally instructed Commonwealth on installation procedures; and (2) the agreement does not provide, as a matter of law, that BFG is entitled to indemnity for these acts which predate the agreement and which form an independent basis for BFG's liability. Appellant argues that the instructions and videotape that predate the sale to RJF by BFG fall outside of the indemnity provisions of the agreement.

Pursuant to Rule 74.04(c), the trial court shall enter summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law. *ITT Commercial Finance v. Mid-Am Marine*, 854 S.W.2d 371 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered. *Id.* at 376[1–3]. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* We accord the non-movant the benefit of all reasonable inferences from the record. *Id.*

A defending party may establish a right to judgment by showing: (1) facts that negate any one of the claimant's facts; (2) that the non-movant, after a period of discovery, has not been able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly pleaded affirmative defense. *Id.* at 381[16].

Once a movant has met the burden imposed by Rule 74.04(c) by establishing a right to judgment as a matter of law, the non-movant's only recourse is to show that one or more of the material facts shown by the movant to be above genuine dispute, is in fact, disputed. *Id.* at 381[17]. If the non-movant cannot contradict the showing of the movant, judgment is properly entered against the non-movant because the movant has already established a right to judgment as a matter of law. *Id.* The non-movant need only show that there is a genuine dispute as to the facts underlying the movant's right to judgment as a matter of law. *Id.* at 382[17]. For the purposes of Rule 74.04, a genuine issue exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. *Id.* A "genuine issue" is a dispute that is real, not merely argumentative, imaginary, or frivolous. *Id.* Where the "genuine issues" raised by the non-movant are merely argumentative, imaginary, or frivolous, summary judgment is proper. *Id.*

■ Our review is essentially de novo. *Id.* at 376[4–6]. The propriety of a summary judgment motion is purely an issue at law, and therefore we need not defer to the trial court's order granting summary judgment. *Id.*

■ Summary judgment is appropriate to dispense with claims interpreting the terms of an agreement between two parties which require contribution and/or indemnification by one party to another. See *Burlington Northern Railroad Company v. Chicago and Northwestern Transportation Co.,* 851 S.W.2d 28, 30 (Mo.App.1993).

■ Since BFG's motion for summary judgment is based upon the interpretation of the agreement providing for the sale of the liner division to RJF, we look to the written document first. If the agreement appears to be complete on its face, it is presumed to be the final and complete agreement between the parties and extrinsic evidence is generally excluded. *Jake C. Byers v. J.B.C. Investments,* 834 S.W.2d 806, 812[6] (Mo.App.1992).

The agreement appears to be complete on its face. Section 2.3(g) clearly provides that RJF must indemnify BFG for all liabilities and obligations arising from the manufacture, sale, service or repair of the products or inventory by RJF on or after the closing date. Clearly the liner is a product manufactured and sold by RJF to Commonwealth. Regardless of the alleged negligence by BFG prior to the closing date, but for RJF's manufacture and sale of the liner in 1990 to Commonwealth, there would have been no claim.

RJF contends that the contract is ambiguous because there is a reference to a nonexistent section in the agreement. Section 2.3(b), which involves liabilities and obligations categorized as product liability claims, refers to § 7.8 for a description of those liabilities and obligations, which in turn cross-references to § 2.4(b). There is no § 2.4(b) in the agreement. As appellant admits in its brief, § 7.8 does not apply to the instant action. The plaintiff's allegations against BFG claim negligence, not product liability, therefore § 7.8 is not relevant. In fact, § 7.8 concerns product liability claims arising from sales by BFG prior to closing and upon which claims are filed or made subsequent to the closing date. This provision called for RJF to indemnify BFG up to a certain amount for these claims. This is consistent with our interpretation that the parties contemplated that RJF would indemnify BFG for certain acts, even though they occurred prior to the closing date, as in the present action, irrelevant of fault.

RJF further contends that the resultant liability of BFG's acts of distributing the videotape and instructions falls outside of the indemnification provision, § 2.3(g), because the negligent instructions and videotape were not "acquired assets" as described in the agreement. Section 2.1(c), defines "acquired assets" as:

> All other tangible personal property located at the facilities, or otherwise primarily related to the Acquired Businesses, wherever located, including, without limitation, ... sales and promotional literature....

BFG contends that the instructions and videotape were "acquired assets" because they were "sales and promotional" material.

Even if the particular videotape and liner instructions are not "acquired assets" as appellant contends, the terms of the agreement are clear and require RJF to indemnify BFG because plaintiff's claim arose from the sale of the liner.

We hold that pursuant to section 2.3(g) of the agreement, RJF is required to indemnify BFG. The grant of the motion for summary judgment was proper. Point denied.

■ BFG filed in this court a motion requesting the sum of $41,905.35 for attorney's fees and costs incurred during the pendency of appeal. The motion is based upon § 8.2 of the agreement between BFG and RJF which provides in pertinent part:

> *Indemnity by Buyer or Extrusion.* In addition to the indemnification provided for elsewhere in this Agreement, Buyer (RJF) and Extrusion hereby agree jointly and severally to indemnify and hold harmless Seller (BFG) from and against any and all claims, liabilities, damages, losses, costs and expenses, including without limitation, reasonable counsel fees and dis-

bursements resulting from ... any breach or default in the performance or observance by Buyer or Extrusion of any of the covenants or other obligations which Buyer or Extrusion is to perform or observe under this Agreement, including, without limitation, Buyer's or Extrusion's failure to satisfy any Assumed Liability.

Pursuant to § 2.3(g) of the agreement, RJF agreed to indemnify BFG for all of the following:

All liabilities and obligations arising from the manufacture, *sale,* service or repair of the products or the inventory, the use of the Acquired Assets, performance of the Assured Commitments, and the operation of the Facilities and Acquired Businesses by Buyer on or after the Closing Date. (Emphasis added.)

RJF argues that the fees and costs of appeal sought by BFG were not incurred by BFG in connection with its defense against plaintiff's claims. RJF argues this is simply an appeal seeking interpretation of the terms of the agreement.

On July 22, 1993, relying on the terms of the agreement, the trial court found RJF was obligated to pay BFG attorney's fees and costs incurred by BFG from the beginning of the lawsuit to the date of the hearing.

Authority exists that this court, in view of contractual provision, may make an allowance for attorney's fees and expenses incurred on appeal by the prevailing party. See *High Life Sales Co. v. Brown–Forman Corp.,* 823 S.W.2d 493, 503[6] (Mo. banc 1992).

The terms of the agreement are not limited to attorney's fees and costs incurred while defending against plaintiff's case in the trial court. Section 8.2 provides that BFG may recover reasonable attorney's fees and disbursements resulting from *any* breach or default in the performance or observance by RJF under the agreement and failure to satisfy any Assumed Liability. This includes attorney's fees and costs on appeal in defending the indemnity provisions of the contract that arose from the breach of the agreement by RJF.

Motion for attorney's fees and costs on appeal in the amount of $41,905.35 is granted. Judgment affirmed.

PUDLOWSKI and CRANDALL, JJ., concur.