Zilma and Wayne NUSBAUM,
Plaintiffs,

v.

CITY OF KANSAS CITY, Missouri,
and Asphalt Plant Sales,
Defendants,

Starlight Theatre and J. E.
Dunn Construction, Inc.,
Respondents–Appellants,

and

PC Contractors, Inc., Appellant–
Respondent.

No. SC 84838.

Supreme Court of Missouri,
En Banc.

April 1, 2003.

Steven G. Piland, Overland Park, for Appellant–Respondent.

David R. Buchanan, Scott A. Hunter, Melodie A. Powell, Kansas City, for Respondents–Appellants.

PER CURIAM.[1]

A Starlight Theatre patron fell at the site of one of the theater's walkways. J. E. Dunn Construction Company was the general contractor for a project near where the injury occurred. PC Contractors, Inc., was a sub-contractor. Both companies and other entities were sued for allegedly causing the unsafe conditions that resulted in the patron's fall and injury. PC appeals the trial court's order granting summary judgment in favor of Dunn on Dunn's claim for contractual indemnification for liability and expenses, including attorneys' fees, Dunn incurred as a result of defending against Zilma and Wayne Nusbaum's personal injury lawsuit.[2] PC contends that the trial court erred in entering judgment in favor of Dunn. Both Dunn and Starlight Theatre Association of Kansas City, Inc., cross-appeal, alleging that the trial court erred in not awarding them the full amount of legal expenses requested and in not awarding prejudgment interest. Dunn provisionally cross-appeals, arguing that the trial court erred in entering judgment in favor of Starlight on Starlight's claim for contractual indemnification for liability and expenses, including attorneys' fees, Starlight incurred as a result of defending against the Nusbaums' lawsuit. The judgment is reversed, and the case is remanded.

Zilma and Wayne Nusbaum attended Starlight Theatre in Swope Park. As they walked to their vehicle after a show, Zilma Nusbaum tripped on a manhole cover that protruded above the sidewalk. She fell and was severely injured. The Nusbaums first sued the City of Kansas City, Mis-

---

1. This Court transferred the case after opinion by the Court of Appeals, Western District. *Mo. Const. article V, section 10*. Parts of the opinion by the Honorable Robert G. Ulrich are incorporated without further attribution.

2. Zilma Nusbaum claims she fell and was injured. Wayne Nusbaum claims loss of consortium.

souri, the owner of Swope Park, for failing to provide safe premises. In an amended petition, the Nusbaums added Starlight and Asphalt Plant Sales, Inc. (APSI)[3] as additional defendants to their lawsuit. Along with general allegations against all the defendants, the Nusbaums alleged that Starlight was responsible for the maintenance of Starlight Theatre, including the sidewalk area where Mrs. Nusbaum fell, and that Starlight, like the city, failed to provide safe premises.

When the Nusbaums discovered that a light pole had been knocked down during the construction of the Starlight Theatre Shirley Bush Helzberg Garden of the Stars (Garden of the Stars), near the area where Mrs. Nusbaum fell, the Nusbaums added Dunn as a defendant to the suit. Along with general allegations against all the defendants, the Nusbaums alleged that Dunn, the general contractor on the Garden of the Stars project, (1) knocked down a light pole near the site where Mrs. Nusbaum fell; (2) promised to replace the light pole; (3) never replaced the light pole; and (4) damaged the manhole/sidewalk area where Mrs. Nusbaum was injured.

After the Nusbaums named Dunn as a defendant, Starlight filed a cross-claim against Dunn asserting a contractual claim for indemnification as provided in its contract with Dunn on the Garden of the Stars project. Thereafter, Dunn filed a third party petition seeking contractual indemnification and/or contribution from PC as provided in its subcontract with PC on the Garden of the Stars project.

During discovery, PC admitted that one of its employees knocked down a light pole. PC further admitted that the light pole was adjacent to the project site and to the manhole cover on which Mrs. Nusbaum tripped. Despite its admission, PC denied that Dunn was entitled to indemnification. PC argued that, immediately following the incident, Dunn agreed to repair the damage that PC had caused and to bill or backcharge PC for the repairs.

After Dunn filed its third party petition, the Nusbaums added PC as a defendant. Along with general allegations against all the defendants, the Nusbaums alleged that Dunn and PC (1) knocked down the light pole near the site where Mrs. Nusbaum fell; (2) damaged the manhole/sidewalk area where Mrs. Nusbaum was injured; (3) promised to repair the damaged property; and (4) never repaired the property.

Starlight filed a motion for summary judgment. The Nusbaums challenged Starlight's motion by proffering evidence that Starlight had actual control and rights of possession and use of the sidewalk area outside the fence of the theater where Mrs. Nusbaum fell.[4] The Nusbaums also argued that Starlight had made "special use" of the sidewalk area by allowing the operation of equipment over the sidewalk during the construction of the Garden of the Stars. Lastly, the Nusbaums argued that the protruding manhole cover and the absence of the light pole constituted a dangerous condition sufficient to render Starlight liable as an abutting owner. The trial court denied Starlight's motion for summary judgment.

---

3. APSI originally installed the manhole, manhole cover, and sidewalk. APSI was granted summary judgment on July 7, 1999.

4. The Nusbaums submitted deposition testimony from a city employee that revealed Starlight Theatre included the parking areas, parking lots, grassy areas, and the areas between the fence and the parking areas. The Nusbaums also submitted an incident report prepared by Starlight's director of operation in connection with Mrs. Nusbaum's fall.

Dunn filed a motion for summary judgment against the Nusbaums. In that motion, Dunn argued that it had no respondeat superior liability for the negligent acts of PC. Dunn further sought summary judgment for its own alleged negligence.

In response to Dunn's motion, the Nusbaums stated that they were not proceeding against Dunn on a respondeat superior theory for the negligence of PC but rather for Dunn's own negligence in failing to replace/repair the light pole, either as the general contractor or because of its express assumption of the duty to do so. Accordingly, the trial court granted Dunn summary judgment on claims of vicarious or respondeat superior liability for the acts of PC but denied Dunn summary judgment on the Nusbaums' claim of Dunn's direct negligence.

On July 7, 1999, Dunn forwarded to PC a letter from the Nusbaums demanding $35,000.00 to settle the Nusbaums' claims against Dunn. PC responded by noting that the subcontract required PC to indemnify Dunn only to the extent of Dunn's liability for PC's negligence and not for the Nusbaums' claims based on Dunn's own direct negligence.

On that same day, PC settled the Nusbaums' claims against it and for any derivative claims of the Nusbaums against either Starlight or Dunn for PC's negligence. PC advised Dunn of the settlement.

The release between the Nusbaums and PC provided, in part:

First Parties [the Nusbaums] are releasing Starlight Theatre Association of Kansas City, Inc., J.E. Dunn Construction Company, and all other companies, organizations or persons who may have contractual, respondeat superior or other derivative liability for the alleged negligent actions of PC Contractors, Inc. in performing its work at the Shirley Bush Helzberg Garden of the Stars located in Starlight Theatre.

On July 10, 1999, Dunn settled with the Nusbaums for $5,000.00. The "Settlement Contract and Complete Release" between the Nusbaums and Dunn released the Nusbaums' claims against Dunn but not the claims against Starlight for Dunn's negligence. After the Nusbaums settled with the city and after the trial court dismissed the Nusbaums' claims against the city, the trial court severed the indemnification claims of Starlight and Dunn from the trial of the Nusbaums' claims against Starlight.

When Starlight eventually settled the Nusbaums' claims against it for $45,000.00, Starlight sought indemnification and attorneys' fees from Dunn. Likewise, Dunn sought indemnification and attorneys' fees from PC. Starlight and Dunn filed motions for summary judgment, and the trial court granted both motions. At a hearing on damages, Dunn sought $35,049.90, representing its $5,000.00 settlement with the Nusbaums and $30,049.90 for all attorneys' fees and expenses in defending the Nusbaums' claims and in establishing indemnification. Starlight sought $70,505.27, representing its $45,000.00 settlement with the Nusbaums and attorneys' fees and expenses for both defending against the Nusbaums' claims and pursuing indemnification. PC denied owing indemnification for the attorneys' fees and the amounts of settlements between the Nusbaums, Starlight, and Dunn.

The trial court entered judgment ordering Dunn to indemnify Starlight in the amount of $68,994.77 (Starlight's $45,000.00 settlement with the Nusbaums and a portion of Starlight's attorneys' fees and expenses) and ordering PC to indemnify Dunn in the amount of $95,194.77 (Starlight's recovery against Dunn, Dunn's $5,000.00 settlement with the Nusbaums,

and a portion of Dunn's attorneys' fees and expenses). The court also ordered PC to pay postjudgment interest to both Dunn and Starlight.

When considering an appeal from summary judgment, this Court reviews the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Facts in support of a party's motion, set forth by affidavit or otherwise, are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* The non-movant is afforded the benefit of all reasonable inferences from the record. *Id.*

The criteria on appeal for testing the propriety of summary judgment are no different from those that should be employed by the trial court to determine the appropriateness of sustaining the motion initially. *Id.* The propriety of summary judgment is purely an issue of law, which an appellate court reviews de novo. *Id.* As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *Id.* Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact and (2) the movant is entitled to judgment as a matter of law. *Id.* at 377. Summary judgment is proper to resolve claims interpreting a contractual indemnification provision. *Chehval v. St. John's Mercy Med. Ctr.*, 958 S.W.2d 36, 37 (Mo.App.1997).

No genuine issue of fact exists. The intent of the parties as expressed in the indemnification provisions of the contracts between Dunn and Starlight and Dunn and PC are at issue and constitute a question of law for determination on appeal.

In its only point on appeal, PC argues that because its agreement with Dunn does not require it to indemnify Dunn for Dunn's own negligence, the trial court erred in entering judgment in favor of Dunn and against PC on Dunn's claim for contractual indemnification. Thus, the first issue presented is whether Dunn's agreement with PC entitled Dunn to receive indemnification for its own negligence.

Missouri law makes clear that "in a private contract, where the parties stand on a substantially equal footing, one may legally agree to indemnify the other against the results of the indemnitee's own negligence." *Kansas City Power & Light Co. v. Fed. Constr. Corp.*, 351 S.W.2d 741, 745 (Mo.1961). A contract of indemnity will not be construed so as to indemnify one against loss or damage resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms. *Parks v. Union Carbide Corp.*, 602 S.W.2d 188, 190 (Mo. banc 1980). "In the absence of such clear expression or where any doubt exists as to the intention of the parties, courts in Missouri will not construe a contract of indemnity to indemnify against the indemnitee's own negligence." *Id.*

Dunn's demand on PC was made pursuant to section 4.6.1 of Dunn's contract with PC, which reads as follows:

4.6 INDEMNIFICATION

4.6.1. To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Sub-

contract, but only to the extent caused in whole or in part by negligent acts or omissions of the Subcontractor, the Subcontractor's Subsubcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss, or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 4.6.

PC contends that the above indemnification provision limits the scope of its liability to only that portion of "claims, damages, losses and expenses" caused by the negligence of PC or those under its supervision. Dunn, however, asserts that, in addition to requiring PC to indemnify Dunn for the portion of "claims, damages, losses and expenses" caused by PC's negligence, the above indemnification provision—**which applies "regardless of whether or not such claim, damage, loss, or expense is caused in part by a party indemnified hereunder"**—also requires PC to indemnify Dunn for the portion of "claims, damages, losses and expenses" caused by Dunn's own negligence.

PC cites *Dillard v. Shaughnessy, Fickel & Scott Architects, Inc.,* 884 S.W.2d 722 (Mo.App.1994), a case applying Kansas law, to support the proposition that the indemnity provision at issue is to be interpreted so as to limit the scope of indemnitor's liability to only those losses that are caused by the negligence of indemnitor or those under indemnitor's supervision. In *Dillard,* architects and engineers (indemnitees), who were not negligent, sought to collect attorneys' fees and costs from the partially negligent general contractor (indemnitor). Even without applying the rules of strict construction that are employed under Kansas law when an indemnitee is seeking indemnification for its own negligence, the court, interpreting an indemnification provision identical in all material respects to the provision at issue in the present case, concluded that the phrase "to the extent" contained in the indemnification provision limited indemnitor's liability to that portion of the attorneys' fees and costs that corresponded to the percentage of fault attributed to indemnitor for the plaintiff's injuries. *Id.* at 724–25.

Missouri law is consistent with Kansas law. Missouri provides that an indemnification contract "will not be construed so as to indemnify one against loss or damage resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms." *Parks,* 602 S.W.2d at 190 (quoting *Kansas City Power & Light Co.,* 351 S.W.2d at 745).

The phrase "to the extent caused" expresses an intention to limit the indemnitor's liability to the portion of fault attributed to the indemnitor. See *Dillard,* 884 S.W.2d at 724–25. Courts in other jurisdictions, considering indemnification provisions virtually identical to the one at issue in the present case, have agreed that the phase "to the extent caused" expresses the intent to limit the indemnitor's liability to that portion of fault attributed to the indemnitor.[5] The preferred construction of

---

**5.** See e.g. *Braegelmann v. Horizon Dev. Co.,* 371 N.W.2d 644, 646 (Minn.App.1985) ("[T]he additional phrase 'to the extent caused'... suggests a 'comparative negligence' construction under which each party is accountable 'to the extent' their negligence contributes to the injury."). See also e.g. *MSI Constr. Managers, Inc. v. Corvo Iron Works, Inc.,* 208 Mich.App. 340, 527 N.W.2d 79, 81 (1995) (holding that the words "to the extent" meant that the indemnitor was only responsible for reimbursing the indemnitee for that

the indemnification provision at issue, one that provides a reasonable meaning to each phrase of the provision, requires nothing more than that PC indemnify Dunn for PC's negligence even if Dunn participates in part in PC's negligent conduct. To hold otherwise would make the intended expression to limit liability to the acts of indemnitor meaningless. To the extent *Buchanan v. Rentenbach Constructors, Inc.*, 922 S.W.2d 467 (Mo.App.1996), is to the contrary, it is overruled.

■ In its provisional cross-appeal point, Dunn argues that the trial court erred in entering judgment against Dunn on Starlight's claim for indemnification. It urges that Starlight is not entitled to indemnification for Starlight's defense of the Nusbaums' direct claims of negligence against Starlight in that the indemnification provision does not clearly and unambiguously provide for indemnification for Starlight's own negligence. Starlight's contract with Dunn contains an indemnification provision identical in all material respects to the provision contained in Dunn's contract with PC. For the reasons previously discussed, the indemnification provision contained in Starlight's agreement with Dunn does not indemnify Starlight for Starlight's own negligence.

Having determined that the indemnification provisions contained in the parties' agreements do not indemnify Starlight and Dunn for their own negligence independent of that of indemnitor, whether Starlight and Dunn are entitled to be reimbursed for the liability and legal expenses they incurred as a result of the Nusbaums' suit must be determined.

■ Because Dunn apparently concedes[6] that it is due no amounts for its settlement with the Nusbaums if the indemnification provision in its contract with PC does not require PC to indemnify Dunn for Dunn's own negligence independent of PC's negligence, the trial court erred by ordering PC to indemnify Dunn for Dunn's $5,000.00 settlement with the Nusbaums.

■ Because Starlight, unlike Dunn, does not concede that its settlement with the Nusbaums was for its own negligence independent of Dunn's negligence, whether the trial court erred in finding that Starlight was entitled to indemnification for its $45,000.00 settlement with the Nusbaums is not determinable. Accordingly, although the record suggests that Starlight's $45,000.00 settlement with the Nusbaums was for Starlight's own negligence independent of the negligence of Dunn and/or PC,[7] the trial court must determine for what amount, if any, Starlight settled the Nusbaums' claims against it for the negligence of Dunn and/or PC.

If, on remand, the trial court determines that Starlight's settlement with the Nusbaums was merely acknowledgement of its

portion of the indemnitee's liability which represented the indemnitor's negligence).

6. Dunn has advanced no argument to the contrary. Moreover, prior to Dunn's settlement with the Nusbaums, the trial court granted summary judgment in favor of Dunn and against the Nusbaums on any claims the Nusbaums had based upon the vicarious or respondeat superior liability of Dunn for PC.

7. A review of the Nusbaums' third amended petition, the Nusbaums "Suggestion in Opposition to Starlight's Theatre's Motion for Summary Judgment," and the "General Release" PC obtained from the Nusbaums reveals that (2) by May of 1999, the Nusbaums appear to have abandoned any derivative claims they may have possessed against Starlight for Dunn and/or PC's negligence; (3) in addition to releasing PC, the Nusbaums also released any derivative claims they may have possessed against Starlight and/or Dunn for PC's negligence.

own negligence independent of the negligent acts or omissions of Dunn and/or PC, then Starlight is not entitled to receive indemnification for its settlement with the Nusbaums. If, however, the trial court determines that Starlight's settlement with the Nusbaums was based on Dunn's and/or PC's negligence, Starlight is entitled to be indemnified by Dunn "to the extent" Starlight's settlement with the Nusbaums reflects Dunn's and/or PC's negligence. Furthermore, if Dunn is required to reimburse Starlight for Starlight's settlement with the Nusbaums and that reimbursement includes monies paid to settle negligence claims attributable to PC, then PC, in compliance with its contract with Dunn, must reimburse Dunn for those amounts.

Because the Nusbaums maintained general allegations against all of the named defendants and because of the order in which the Nusbaums named the defendants, Starlight and Dunn, in addition to incurring legal expenses from their defense of their own negligence, incurred legal expenses from their defense of the negligence of their indemnitor. Thus, a portion of Starlight's legal expenses are attributable to its defense of itself for the negligent acts/omissions of Dunn and PC. Likewise, a portion of the legal expenses incurred by Dunn resulted from Dunn's defense of itself against the negligence of PC.

Starlight and Dunn are entitled to indemnification for the legal expenses incurred as a result of defending against the negligence of their indemnitor and those for which their indemnitor was liable. See *Dillard*, 884 S.W.2d at 724–25. Starlight's and Dunn's right to recover such legal expenses, however, did not arise until their indemnitor had notice of the lawsuit and an opportunity to defend. *See Monsanto*

*Co. v. Gould Elecs., Inc.*, 965 S.W.2d 314, 318 (Mo.App.1998).

Accordingly, the trial court, on remand, must first determine what portion of the fault is attributable to Starlight, Dunn, and PC by determining to what degree each party's negligent acts or omissions caused the injuries to Mrs. Nusbaum. In doing so, however, the trial court should not attribute to any of the parties that portion of fault the city accepted as shown by the city's settlement with the Nusbaums.

After determining the portion of the fault that is attributable to each party, the trial court should order that the following reimbursements be made:

(1) Based on the percentage of fault ascribed to PC, PC must reimburse Dunn that same percentage of the expenses and legal fees Dunn incurred from the date PC first received notice of the Nusbaums' lawsuit[8] to June 30, 1998, when the Nusbaums named PC as a defendant and PC began fulfilling its obligation to defend against a lawsuit that it "caused in part."

(2) Based on the percentage of fault ascribed to Dunn, Dunn must reimburse Starlight that same percentage of the expenses and legal fees Starlight incurred from the date Dunn first received notice of the Nusbaums' suit to February 13, 1998, when the Nusbaums named Dunn as a defendant.

(3) Based on the percentage of fault ascribed to PC, Dunn must reimburse Starlight that same percentage of the expenses and legal fees Starlight incurred from the date Dunn first received notice of the Nusbaums' suit to June 30, 1998, when the Nusbaums named PC as a defendant. PC, however, must reimburse Dunn for all such amounts because, although they constitute legal expenses to Starlight, they are indemnified liabilities and costs to Dunn. *See Dillard v. Shaughnessy, Fickel &*

8. The record suggests that PC first received a demand from Dunn on April 23, 1998.

*Scott Architects, Inc.*, 943 S.W.2d 711, 720 (Mo.App. W.D.1997) (Dillard II).

Starlight and Dunn both cross-appeal, contending that the trial court erred in failing to (1) award them the legal expenses they incurred in pursuing indemnification against their indemnitor and (2) award them prejudgment interest pursuant to section 408.020.[9]

While the indemnification provision at issue in the present case provides for the recovery of legal expenses, including attorneys' fees incurred in the defense of a claim, nothing in the indemnification provision suggests that it provides for the recovery of legal expenses incurred in establishing the right to indemnity.[10] Starlight and Dunn cite *RJF Int'l. Corp. v. B.F. Goodrich Co.*, 880 S.W.2d 366 (Mo.App. 1994), to support their contention that they are entitled to the legal expenses they incurred in establishing their right to indemnity. What Starlight and Dunn fail to recognize, however, is that, unlike the provision at issue in the present case, the indemnification provision at issue in *RJF* expressly provided for the recovery of expenses incurred in establishing the right to indemnity. *Id.* at 371–72. The trial court did not commit error in determining that Starlight and Dunn were not entitled to receive indemnification for the legal expenses they incurred in pursuing indemnification against their indemnitor.

■ Section 408.020 permits the award of prejudgment interest at a rate of nine percent per annum on liquidated claims after demand for payment is made. Although the demand need be in no certain form, it must be definite as to amount and time. *Monsanto*, 965 S.W.2d at 318. Prejudgment interest is generally not war-

ranted when the debtor is unaware of the amount owed. *Id.*

■ Because the indemnification amounts owed were indefinite prejudgment, the trial court did not err in refusing to award Starlight and Dunn prejudgment interest. Starlight and Dunn's motion for attorneys' fees on appeal are also denied.

Based on the foregoing, the trial court's order granting summary judgment is reversed, and the case is remanded.

All concur.

---

9. All statutory references are to RSMo 2000.

10. Courts in other jurisdictions, interpreting virtually the same provision at issue in this case, agree. *See, e.g., Citadel Corp. v. All-*

*South Subcontractors, Inc.* 217 Ga.App. 736, 458 S.E.2d 711, 712–13 (Ga.App.1995). *See also, e.g., Seifert v. Regents of Univ. of Minn.*, 505 N.W.2d 83, 86–87 (Minn.App.1993).