KURT S. ODENWALD, Judge
Introduction
Realty Associates Advisors, LLC and the Realty Associates Fund VII, L.P. (collectively, "Realty") appeal from the trial court's judgment awarding Johnson Controls, Inc. ("Johnson Controls") $608,936.48 on Johnson Controls's cross-claim seeking indemnification for its legal expenses. Johnson Controls sought recovery pursuant to an indemnity clause in a lease agreement ("the Lease Agreement") between *35 Realty and Johnson Controls. Realty raises two points on appeal. In Point One, Realty contends that the trial court erred in awarding Johnson Controls damages because Realty did not owe a duty to indemnify Johnson Controls against the plaintiff's claims under the Lease Agreement. In Point Two, Realty argues that the trial court erred by including in its award of attorneys' fees to Johnson Controls those attorneys' fees incurred by Johnson Controls in enforcing its right to indemnity against Realty. Because Realty did not provide this Court with an adequate record from which we may properly consider Realty's liability for indemnity, we dismiss Realty's Point One. Because the Lease Agreement expressly authorized the trial court to award Johnson Controls those attorneys' fees it incurred as a result of enforcing its right to indemnity against Realty, we deny Point Two and affirm the trial court's judgment.
Factual and Procedural History
Allen J. Davis ("Davis") sued Realty, Johnson Controls, and Sandsone Group/DDR LLC and Sandsone Group, Inc. (collectively, "Sandsone"), seeking damages for personal injury after Davis slipped and fell at a property owned by Realty, leased by Johnson Controls, and managed by Sandsone.[1] Pursuant to the terms of the Lease Agreement, Johnson Controls tendered the defense of the lawsuit to Realty and sought indemnification against Davis's claim from Realty. The Lease Agreement provided, in part, the following:
15. Indemnity
...
B. [Realty] shall indemnify and hold [Johnson Controls] harmless from and against all Damages, which may be imposed upon or incurred by or asserted against [Johnson Controls] arising from [Realty's] use of or the condition of the Property, or from [Realty's] action or inaction taken thereto or thereon, or from the breach by [Realty] of any of its obligations hereunder, whether or not, in any case, attributable to [Realty] or [Realty's] employees, customers, agents, invitees, licensees, or guests (collectively, "[Realty's] Representatives"), provided, such Damages do not arise from the acts, omissions or the negligence of [Johnson Controls] or [Johnson Controls's] Representatives. In the event that any action or proceeding shall be brought against [Johnson Controls] by reason of any claim above referred to, [Realty], upon written notice from [Johnson Controls], shall at [Realty's] sole cost and expense defend the same, in which event, [Realty] may select the attorneys to be used[.]
Section 15(A) of the Lease Agreement included a similar provision requiring Johnson Controls to defend claims brought against Realty and to indemnify Realty from damages under certain conditions. Section 15(A) also defined "Damages" as "all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs, charges, and expenses, including attorneys' fees[.]"
Realty refused Johnson Controls's tender of the defense of Davis's claims and indemnification request. Johnson Controls and Realty then filed opposing cross-claims, each alleging that the other was obligated to defend and indemnify against Davis's claims under the Lease Agreement. Davis ultimately settled his claims *36 with all of the defendants and dismissed his claims with prejudice. Upon the dismissal of Davis's claims, only the opposing cross-claims of Realty and Johnson Controls remained pending before the trial court.
Johnson Controls moved for partial summary judgment on its cross-claim, asking the trial court to establish Realty's liability for damages incurred by it as a result of Realty's failure to defend and indemnify against Davis's claims as required under the Lease Agreement. Johnson Controls reserved the issue of the amount of damages. The trial court granted partial summary judgment in favor of Johnson Controls, finding that Realty owed Johnson Controls a duty to defend and indemnify against Davis's claims. Realty similarly moved for summary judgment on its cross-claim seeking damages for Johnson Controls's failure to indemnify Realty. The trial court denied Realty's motion, and concluded that "the sole issue" remaining between Johnson Controls and Realty was the amount of Johnson Controls's damages.
Subsequently, Johnson Controls moved for an award of attorneys' fees and costs it incurred due to Realty's refusal to defend and indemnify it against Davis's claims. In its motion, Johnson Controls requested not only the attorneys' fees and costs expended in defending against Davis's suit, but also the attorneys' fees and costs Johnson Controls incurred in litigating its indemnification cross-claim against Realty. The trial court held an evidentiary hearing, received expert testimony on the issue of damages, and considered the exhibits submitted with Johnson Controls's motion. The trial court then awarded Johnson Controls $608,936.48 in attorneys' fees, costs, and other damages. This appeal follows.
Points on Appeal
Realty raises two points on appeal. Point One asserts that the trial court erred in awarding Johnson Controls damages because Realty was not obligated to indemnify Johnson Controls under the Lease Agreement; rather, Johnson Controls was obligated to indemnify Realty under the Lease Agreement. Point Two claims that the trial court erred when it included in its attorneys' fees award, those fees and costs incurred by Johnson Controls to establish its right to indemnity from Realty.
Discussion
I. Point One-Realty's Failure to Provide an Adequate Record
Realty's first point focuses on the trial court's finding that Realty was obligated to defend and indemnify Johnson Controls against Davis's lawsuit. Realty maintains that it was Johnson Controls not Realty, which owed a duty to indemnify against Davis's lawsuit under the Lease Agreement. Johnson Controls avers that the record on appeal filed by Realty prevents this Court from undertaking any meaningful appellate review of this point on appeal. Specifically, Johnson Controls claims that Realty did not include in the record on appeal the summary-judgment pleadings and evidence upon which the trial court relied in finding that Realty was obligated to indemnify Johnson Controls under the Lease Agreement. Johnson Controls maintains that, without the summary-judgment records, we cannot review the trial court's ruling on this point. We agree.
Appeals generally shall be taken in accordance with the rules of civil procedure relating to appeals. See Indep. Taxi Drivers Ass'n, LLC v. Metro. Taxicab Comm'n, 524 S.W.3d 157, 160 (Mo. App. E.D. 2017). Although not exclusive, Rule *37 81 governs many facets of appeals.[2] Id. Pertinent here, "Rule 81.12(d) obligates the appellant to file the record on appeal with this Court."[3] Woods v. Friendly Ford, Inc., 248 S.W.3d 665, 672 (Mo. App. S.D. 2008) (overruled on other grounds by Badahman v. Catering St. Louis, 395 S.W.3d 29, 40 (Mo. banc 2013) ). Accordingly, Rule 81.12(d) required Realty, as the appellant, to submit the "record on appeal." Id.; Nolfo v. Dubin, 861 S.W.2d 136, 138 (Mo. App. E.D. 1993). Rule 81.12(a) explains that this "record on appeal" must include all of the records, proceedings, and evidence necessary to determine all the questions presented to the appellate court. Coyne v. Coyne, 17 S.W.3d 904, 906 (Mo. App. E.D. 2000). Failure to comply with Rule 81.12 by submitting a record on appeal that omits the documents necessary for appellate review will result in dismissal. Lewis v. Allstate Ins. Co., 131 S.W.3d 451, 453-54 (Mo. App. W.D. 2004).
In the present case, the trial court resolved the issue of liability under the Lease Agreement after reviewing the competing motions for summary judgment filed by Johnson Controls and Realty. The docket sheet shows that the parties presented the trial court with competing motions for summary judgments, arguments in support, and statements of uncontroverted material facts with supporting exhibits. The docket sheet further reveals that the parties filed responses, replies, and sur-replies, as well as additional statements of uncontroverted material facts. In short, the record reflects that the trial court awarded Johnson Controls partial summary judgment after considering a wealth of summary-judgment evidence offered by the parties under Rule 74.04(c).
Critically, none of these filings or supporting evidence-despite forming the summary-judgment records and becoming the basis for the trial court's judgment-are properly before this Court. Why is this omission fatal to this point on appeal? Because "[f]acts come into a summary judgment record only via Rule 74.04(c)'s numbered-paragraphs-and-responses framework," Pemiscot Cty. Port Auth. v. Rail Switching Servs., Inc., 523 S.W.3d 530, 532 (Mo. App. S.D. 2017) (quoting Jones v. Union Pac. R.R., 508 S.W.3d 159, 161 (Mo. App. S.D. 2016) ). In turn, appellate courts review summary judgment based on the Rule 74.04(c) record, not the whole trial-court record. Id. at 532-33.
As meaningfully expressed by the Southern District, "it remains Rule 74.04(c)'s precept that material facts be asserted, then admitted or denied, via separately-numbered paragraphs 'in order to clarify the areas of dispute and eliminate the need for the trial or appellate court to sift through the record to identify factual disputes.' " Id. at 533 (quoting Cross v. Drury Inns, Inc., 32 S.W.3d 632, 636 (Mo. App. E.D. 2000) ). "Facts come into a summary judgment record one and only one way -as separately-numbered paragraphs and responses per Rule 74.04(c)." Id. at 534. For this Court to review the trial court's judgment, we must scrutinize the summary-judgment facts because they are "the facts relevant to the questions presented for determination" by Realty's challenge to the factual propriety of summary *38 judgment. Id. (quoting Chopin v. AAA, 969 S.W.2d 248, 251 (Mo. App. S.D. 1998) ).
The record on appeal does not contain the summary-judgment pleadings and evidence that guided the trial court's finding that Realty was liable for indemnification under the Lease Agreement.[4] Without the summary-judgment motions and supporting materials, we cannot review the trial court's grant of partial summary judgment. See Vill. of Big Lake v. BNSF Ry. Co., 433 S.W.3d 460, 462 n.2 (Mo. App. W.D. 2014) (explaining that a party violated Rule 81.12 by omitting from the appellate record the motion for summary judgment that was the subject of the appeal); City of Perryville v. Nadeau, 88 S.W.3d 162, 164 (Mo. App. E.D. 2002) (determining that "Missouri case law clearly requires that an appellant file a copy of a summary judgment motion that is the subject of an appeal.").
Realty contends that this Court is able to ascertain the arguments of the parties and factual materials contained in the summary-judgment motions by examining the evidentiary-hearing transcript and the other filings included in the record on appeal. This position, however, contradicts the specific procedure demanded by Rule 74.04 for adjudicating summary-judgment motions. See Jones, 508 S.W.3d at 161 (stating that courts determine and review summary judgment based exclusively on the Rule 74.04(c) record). The following admonition bears repeating: "Facts come into a summary judgment record only via Rule 74.04(c)'s numbered-paragraphs-and-responses framework." Pemiscot Cty. Port Auth., 523 S.W.3d at 532 (quoting Jones, 508 S.W.3d at 161 ). As a result, including the summary-judgment materials in the record on appeal is crucial for appellate review of summary judgment. See Lackey v. Iberia R-V Sch. Dist., 487 S.W.3d 57, 61-62 (Mo. App. S.D. 2016).
Without having before us the parties' submitted statements of uncontroverted facts, the responses thereto, and the attached supporting affidavits and exhibits, we cannot determine which facts were established through the parties' Rule 74.04(c) motions, or which facts were either admitted, contested, or refuted by the parties. Nor can we determine whether the trial court limited its review solely to the contents of our record on appeal when it found Realty liable to Johnson Controls for indemnification under the Lease Agreement. See Cain v. Richart, 781 S.W.2d 265, 266 (Mo. App, S.D. 1989) (explaining that a party fails to comply with Rule 81.12 when the appellate court "cannot ascertain, upon the record before [it], what was presented to the trial court."). We simply have no basis to determine whether the trial court erred in concluding that the undisputed material facts establish Johnson Controls's right to indemnity as a matter of law. See Lackey, 487 S.W.3d at 61-62 ; City of Ferryville, 88 S.W.3d at 164.
Without the summary-judgment records, we lack the necessary information to review the trial court's judgment with any degree of confidence in the fairness, reasonableness, and accuracy of our result. If Realty desired appellate review of its liability under the Lease Agreement, then it needed to provide this Court with the summary-judgment records addressing that very issue.[5] See *39 City of Perryville, 88 S.W.3d at 164. We will not speculate on the contents of the summary-judgment motions and their supporting materials.
The absence of the required summary-judgment records leaves this Court with nothing to evaluate. Id. Because Realty failed to provide this Court with an adequate record from which we may properly consider its liability for indemnity, we cannot consider Point One's merits. Point One is dismissed.[6]
II. Point Two-The Trial Court's Award Properly Included Attorneys' Fees and Costs Johnson Controls Incurred in Enforcing the Right to Indemnity
A. Standard of Review
In this point, Realty does not challenge the amount of the underlying damage award, but only the amount of attorneys' fees and costs awarded by the trial court. The amount of the attorneys' fees awarded lies within the trial court's sound discretion, and "[t]his determination will not be disturbed on appeal unless the amount awarded is arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper judicial consideration." Winghaven Residential Owners Ass'n v. Bridges, 457 S.W.3d 383, 385-86 (Mo. App. E.D. 2015). However, "[a]lthough the trial court is usually granted broad discretion in awarding attorneys' fees, it has no discretion in complying with terms of attorneys' fees made by contract." Supplemental Med. Servs. v. Medi Plex Health Care, 293 S.W.3d 128, 132 (Mo, App. E.D. 2009).
B. Record on Appeal
Unlike Point One, an adequate legal record has been filed to allow our consideration of Point Two. After the trial court ruled that Realty owed Johnson Controls a duty to defend and indemnify under the Lease Agreement, Johnson Controls moved for its attorneys' fees and costs. In the record on appeal, Realty included Johnson Controls's cross-claim, Realty's answer, Johnson Controls's motion for attorneys'
*40 fees with its attached exhibits, Realty's response, a transcript of the evidentiary hearing held by the trial court on the amount of attorneys' fees and costs, and the trial court's judgment. Because the record on appeal contained the materials used by the trial court to determine the attorneys' fees and costs to be awarded, we may review Point Two's merits.
C. No Trial-Court Error
Once liability on a contract has been determined, damages, in the form of attorneys' fees authorized by the contract, follow as a matter of law. State ex rel. Chase Resorts v. Campbell, 913 S.W.2d 832, 835 (Mo. App. E.D. 1995). The trial court may calculate the amount of attorneys' fees pursuant to the contract. Id. Realty argues that the trial court improperly computed the amount of the award of attorneys' fees when it did not limit the attorney-fee award to the attorneys' fees incurred by Johnson Controls in defending against Davis's personal-injury claim, but included Johnson Controls's legal expenses expended in enforcing its right to indemnity. Realty posits that the trial court must limit the amount of attorneys' fees and costs awarded to Johnson Controls to only those fees and costs accrued in Johnson Controls's defense of Davis's slip-and-fall claim. Johnson Controls concedes that the trial court included attorneys' fees spent by Johnson Controls in litigating its right to indemnity, but asserts that Section 15(B) of the Lease Agreement specifically allows for the recovery of attorneys' fees sustained in establishing Realty's obligation to indemnify.
Regarding attorneys' fees, "Missouri courts adhere to the 'American Rule,' which provides that each litigant should bear his or her own expenses." St. Louis Title, LLC v. Talent Plus Consultants, LLC, 414 S.W.3d 24, 26 (Mo. App. E.D. 2013). Exceptions to this general rule are permitted where: "(1) the fees are authorized by statute or contract; (2) very unusual circumstances exist so it may be said equity demands a balance of benefits; (3) the fees result from an individual being involved in collateral litigation; or (4) in special circumstances, a party's conduct is frivolous, without substantial legal grounds, reckless, or punitive." Arcese v. Daniel Schmitt & Co., 504 S.W.3d 772, 787 (Mo. App. E.D. 2016).
Johnson Controls points to the first exception to "the American Rule," maintaining that Section 15(B) of the Lease Agreement authorized the recovery of attorneys' fees accrued in litigating Realty's breach of its indemnity obligations. We note that Missouri courts generally do not interpret indemnity clauses to authorize recovery of attorneys' fees spent in a suit between the contractual parties for breaching the indemnity provision. See. e.g., Nusbaum v. City of Kansas City, 100 S.W.3d 101, 109 (Mo. banc 2003). However, parties are free to contract around this rule, and the non-breaching party can recover attorneys' fees expended in establishing the right to indemnity if the indemnity clause "expressly provide[s] for the recovery of expenses incurred in establishing the right to indemnity," See id. If the parties use clear and unequivocal language expressly authorizing the recovery of attorneys' fees resulting from breaches of the indemnity clause, then the court must enforce the terms as written. See, e.g., Lee v. Investors Title Co., 241 S.W.3d 366, 368 (Mo. App. E.D. 2007).
Here, Section 15(B) provides that Realty "shall indemnify and hold [Johnson Controls] harmless from and against all Damages ... arising from [Realty's] use of or the condition of the property, or from [Realty's] action or inaction taken thereto or thereon, or from the breach by [Realty]
*41 of any of its obligations hereunder [.]" (emphasis added). The Lease Agreement defines "Damages" as "all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs, charges, and expenses, including attorneys' fees [.]" (emphasis added).
We are persuaded that the term "hereunder" encompasses all of the parties' obligations under the Lease Agreement. See, e.g., Util. Serv. & Maint., Inc. v. Noranda Aluminum, Inc., 163 S.W.3d 910, 912, 914 (Mo. banc 2005) (finding that an indemnity clause referring to obligations or performance "hereunder" as relating to obligations or performances arising out of the written contract). A plain reading of Section 15(B) contemplates a lawsuit between the parties in the event Realty breached its obligations established by the Lease Agreement. One of its obligations under the Lease Agreement is Realty's duty to indemnify. Section 15(B) thus provides for recovery of legal expenses incurred by Johnson Controls in successfully litigating Realty's breach of the indemnity provision. Through its express terms, Section 15(B) sufficiently places Realty on notice of its liability for Johnson Controls's attorneys' fees associated with Johnson Controls's successful enforcement of the indemnity clause. See Lee, 241 S.W.3d at 368 (explaining that the "clear" language of the indemnity clause, in indemnifying for all damages incurred "in connection with [indemnitee's] enforcement of its right under this Agreement," permitted the indemnitee to recover fees sustained in enforcing the clause); RJF Int'l Corp. v. B.F. Goodrich Co., 880 S.W.2d 366, 371-72 (Mo. App. E.D. 1994). Because the parties used clear and unequivocal language authorizing the recovery of attorneys' fees arising from Realty's breach of the indemnity clause, this Court must enforce the provision as written. See Lee, 241 S.W.3d at 368.
Indeed, Section 15(B)'s requirement that Realty indemnify Johnson Controls for legal expenses arising from Realty's breach of its indemnity obligations comports with recent Missouri case law in RJF International Corp. v. B.F. Goodrich Co., 880 S.W.2d 366 (Mo. App. E.D. 1994) and Nusbaum v. City of Kansas City, 100 S.W.3d 101 (Mo. banc 2003). In RJF, the indemnitee moved on appeal for its attorneys' fees and cost incurred in litigating an indemnity clause. 880 S.W.2d at 371. The clause provided that the indemnitor agreed to indemnify the indemnitee from any damages, including reasonable attorneys' fees, resulting from "any breach or default in the performance or observance by [the indemnitor] of any of the covenants or other obligations which [the indemnitor] is to perform or observe under this Agreement, including, without limitation, [the indemnitor's] failure to satisfy any Assumed Liability." Id. at 371-372. The RJF court found that the clause permitted recovery of attorneys' fees expended in establishing the indemnitee's right to indemnity. Id. at 372. Specifically, the RJF court held that the clause expressly allowed the indemnitee to recover reasonable attorneys' fees resulting from any breach in the indemnitor's performance under the agreement. Id. In enforcing the clause's express terms, the RJF court granted the indemnitee's motion for attorneys' fees incurred in litigating the indemnitor's breach of the indemnity clause. Id.
Subsequently, the Supreme Court of Missouri decided Nusbaum, 100 S.W.3d at 102. In Nusbaum, the indemnitee sought indemnification from a subcontractor for legal expenses spent both in defending against the underlying suit and associated with establishing the right to indemnity. Id. at 109. The indemnity clause provided that "Subcontractor shall indemnify and hold harmless [the indemnitee] ... from and against claims, damages, losses, and *42 expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, but only to the extent caused in whole or in part by negligent acts or omissions of the Subcontractor[.]" Id. at 105-06. In interpreting the clause, the Nusbaum court compared it to the provision in RJF. Id. at 109. In so doing, the Nusbaum court determined that, contrary to the clause before it, the provision in RJF"expressly provided for the recovery of expenses incurred in establishing the right to indemnity." Id. Instead, in Nusbaum, the clause directly limited the subcontractor's indemnification to claims resulting or arising from performance of the subcontractor's work. Id. at 105-06. As a result, the Nusbaum court held that the indemnitor's duty to indemnify did not cover attorneys' fees associated with enforcing the indemnity clause. Id. at 109.
Realty's claim that Section 15(B) is analogous to the clause in Nusbaum is unavailing. In Nusbaum, the recovery of attorneys' fees and costs was directly limited to damages "arising out of or resulting from performance of the Subcontractor's Work[.]" Id. at 105. Consequently, the indemnity clause in Nusbaum, according to its express terms, did not include attorneys' fees arising from the indemnitor's breach of the indemnity clause itself. Id. at 109. In contrast, Section 15(B) here requires Realty to indemnify Johnson Controls for any damages, including attorneys' fees, arising from Realty's breach of its obligations under the provision. Section 15(B) does not expressly or impliedly limit recovery only to attorneys' fees incurred in the underlying claim or arising out of the parties' underlying conduct. Not only does Section 15(B) lack the express limitation found in Nusbaum, but Section 15(B) instead directly authorizes recovery of attorneys' fees expended in enforcing Realty's obligations.
Contrary to Nusbaum, we find Section 15(B) comparable to the indemnity clause in RJF. RJF Int'l Corp., 880 S.W.2d at 371-72, Both Section 15(B) and the RJF clause expressly incorporate as damages any legal expenses sustained in rectifying the indemnitor's breach of the indemnity clause. Id. By expressly incorporating such legal expenses as damages, Section 15(B) and the RJF clause extend recovery of damages beyond that of attorneys' fees expended in the underlying litigation. Id. Thus, the parties here agreed to indemnify Johnson Controls for damages arising from Realty's breaches of Section 15(B).[7]
The clear and unequivocal language of Section 15(B) permitted recovery of attorneys' fees expended in enforcing the indemnity clause. See Lee, 241 S.W.3d at 368 ; RJF Int'l Corp., 880 S.W.2d at 371-72. Because Section 15(B) clearly authorized *43 Johnson Controls's recovery of its attorneys' fees incurred in enforcing the Lease Agreement, the trial court did not err by including such attorneys' fees in its award of legal expenses in its judgment. See Lee, 241 S.W.3d at 368 ; RJF Int'l Corp., 880 S.W.2d at 371-72. Point Two is denied.
Conclusion
The judgment of the trial court is affirmed.
Robert G. Dowd, Jr., P.J., concurs.
Sherri B. Sullivan, J., concurs.

Realty, Johnson Controls, and Sandsone also filed third-party petitions against Full Care, Inc. Realty and Sandsone dismissed their third-party petitions against Full Care, Inc.

All rule references are to Mo. R. Civ. P. (2017).

By their plain language, Rule 81.12(e) allows a respondent who is dissatisfied with the record on appeal to supplement the record, and Rule 81.12(f) authorizes this Court to order additions to the record. However, "these provisions do not relieve an appellant of the duty to compile the record[.]" Buford v. Mello, 40 S.W.3d 400, 402 (Mo. App. E.D. 2001).

In its reply brief, Realty claims that the legal file contained "the parties' Motions for [P]artial Summary Judgment" without citing to the record. Despite Realty's unsupported representation to the contrary, the summary-judgment motions and supporting materials are clearly absent from the record on appeal.

After the parties filed their briefs, Realty requested leave to supplement the record. The supplemental record purportedly contained over two thousand pages of materials. In its request, Realty did not explain why we should grant it leave, why the initial record was deficient, or whether supplementing the record would prejudice Johnson Controls. We denied the request. During Oral Argument, Realty renewed its request to supplement the record. We again deny Realty's request. Had this Court permitted the supplemental filing as requested, we would have become responsible for searching the proposed voluminous summary-judgment record to locate evidence supporting every factual proposition proffered in Realty's first point. In essence, we would have assumed the role of advocate for Realty. This we will not do. See Pemiscot Cty. Port Auth., 523 S.W.3d at 534 (explaining that we "cannot sift through a voluminous record, separating fact from conclusion, admissions from disputes, the material from the immaterial, in an attempt to determine the basis for the motion without impermissibly acting as advocates."). We will not cast aside our role as a neutral adjudicator to serve as a party's advocate. See id. Realty had an opportunity to present a proper record on appeal before the parties' briefing was complete. Due to fairness and neutrality considerations, Realty's failure to include the summary-judgment materials in the record on appeal prevents appellate review of Point One. We further note, as an observation, that Realty is not alone in failing to file the required record on summary-judgment appeals. This deficiency has become too common place in recent years. As noted by the Southern District in Pemiscot County Port Authority, this "error is hardly unique to this otherwise well-lawyered case, but plagues large-record summary judgment appeals seen in this [C]ourt, even with attorneys of the highest rank involved." Id. at 532.

Realty's initial and reply briefs also do not provide a standard of review, violating Rule 84.04(e). We may dismiss a point on this basis alone. Carter v. Treasurer of the State, 532 S.W.3d 203, 206-07 (Mo. App. W.D. 2017).

Although not cited by the parties, we feel compelled to note Missouri Pacific Railroad, Co., v. Rental Storage and Transit Co., 524 S.W.2d 898 (Mo. App. Springfield 1975). In Missouri Pacific, the agreement provided that the indemnitor shall indemnify the indemnitee against any expenses "caused by, arising out of or connected with" indemnitor's breach of the contract. Id. at 912. The Southern District found that the agreement plausibly could permit the indemnitee to recover fees expended in enforcing the clause. Id. However, the Southern District ruled that "[n]evertheless, and without prolonging this opinion further, an extensive examination of the authorities convinces us that, properly construed, [the provision] before us allows recovery of the attorneys' fees incurred in defense of [the underlying] claim, but does not extend to services rendered in establishing the right to indemnity." Id. Importantly, the Missouri Pacific court summarily interpreted the indemnity clause without the benefit of RJF and Nusbaum. As this opinion is not subsequently cited by Missouri courts addressing this issue, we find that the framework delineated in RJF and Nusbaum instead dictates the outcome here.