**MUTUAL MARINE OFFICE, INC., and Employers Mutual Casualty Company, Plaintiffs,**

v.

**ATWELL, VOGEL & STERLING, INC., Defendant.**

**No. 77 Civ. 5574–KTD.**

United States District Court, S. D. New York.

Feb. 5, 1980.

Bigham, Englar, Jones & Houston, New York City, for plaintiffs; Francis A. Montbach, New York City, of counsel.

Townley & Updike, New York City, for defendant; Richard R. Lutz, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs, an insurance company and its underwriter, wrote and issued a "Difference in Conditions" insurance policy covering, among other things, flood damage at various locations owned by the Gladding Corp. including one warehouse in Oneonta,

New York. The premium for such insurance was in excess of $35,000.

Defendant inspects premises for various insurance companies including plaintiff. At the behest of the plaintiff, defendant inspected the Gladding Corp. premises in Oneonta, New York. Plaintiff paid defendant $17.50 (plus $1.00 for a photograph of the premises) for a written inspection report. This report did not disclose that Gladding Corporation's Oneonta premises were between 400 feet and 1,000 feet from the Susquehanna River. Indeed, the defendant's report of inspection had a negative answer to the question "Is there any danger of flood from such creek, river, bay, or other body of water?"

The Susquehanna flooded and the storm sewers backed up causing flood damage to the Gladding Corporation, Oneonta plant in excess of three hundred thousand dollars. Plaintiffs paid Gladding Corporation under the insurance policy and by this action seeks to recover that amount from the defendant.

The defendant now moves for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. A more detailed discussion of the facts is necessary in order to resolve this motion.

In late August of 1976, the plaintiffs executed a binder on the various properties owned or leased by the Gladding Corporation. This business was brought to the plaintiff by Alexander & Alexander, a large New York insurance brokerage house. The so-called "Difference in Conditions" policy was issued by the plaintiff to the Gladding Corporation on October 13, 1976 and included Gladding's Oneonta plant. The policy contained a specific provision requiring 60 days' notice of cancellation and there was no specific provision permitting deletion of a particular location.

Approximately two months after the policy had been issued, plaintiffs requested the defendant to perform an inspection of the various premises which it had insured, including the Oneonta plant. The inspection of the Oneonta premises was performed on January 17, 1977. The inspector, employed by the defendant, made no mention of the river on his report. Apparently the route taken by the inspector to the Gladding Corporation facility did not take him within sight of the river. He does not remember, nor does the representative of the Gladding Corporation who was interviewed remember, whether the question of proximity to the river arose during the inspection. In any event, the inspection report does *not* indicate that the river was between 400 feet and 1,000 feet of the plant. In response to interrogatories, plaintiffs have stated that the Susquehanna River is visible from the Gladding premises only from the roof of the building.

The report was received by the plaintiff on February 8, 1977. Nothing was done at that time. The flood in question occurred on March 14, 1977, but the plaintiffs took no action concerning the policy until April 7, 1977. A new endorsement of the policy was thereafter perfected and coverage was terminated at the Oneonta location on May 1, 1977.

It is plaintiffs' contention that if the written report received from the defendant had been totally accurate in all respects it would have terminated the flood coverage of the policy at the Oneonta location. Since the inspection report, however, was inaccurate, plaintiff seeks in this action to hold the defendant liable for its loss under the insurance policy charging defendant with breach of warranty and negligence.

By its answer, the defendant denied certain allegations and included, among its affirmative defenses, allegations that the report contains a statement which provides in part:

This report made from observation and interview, and concerns such conditions and practices as were observed and considered at time of call; it is not intended to indicate that there are no other exposures . . .. We do not assume any legal liability due to misinformation given our inspector, nor for inaccuracies; human error etc. . . .

It appears that all of the inspection reports from the defendant to the plaintiff

over the years have contained a similar disclaimer. Indeed, one of the defendant's booklets, entitled "Outlines of Operations", produced from the files of Mutual Marine is more explicit:

An imprint on our audit and inspection reports indicates that we make our reports from such information and records as are made available by the insured or his representative. Audits are not made by certified public accountants, nor are our inspections civil, construction, electrical, or chemical engineers' inspection reports. These are made at a very moderate fee, and we cannot accept any legal liability for error or omission. We do, of course, agree to remake audits or inspections without charge if an error is made.

The defendant's motion for summary judgment is based on three arguments:

1. The plaintiff could not have cancelled the risk under the policy between the receipt of the inspection report and the date of the loss;

2. The plaintiffs would have accepted the risk even if the report had indicated the proximity of the river to the insured premises; and

3. The disclaimer of liability contained in the report and accepted over the years by plaintiffs bars the plaintiffs' claim.

The second argument when viewed with the history of the plaintiffs' underwriting experience and in conjunction with the admitted fact that the insured was not asked about the possibility of flooding and the fact that there had been no flooding at the Oneonta plant before, may well be overwhelmingly attractive to a jury, but it still presents possible questions of fact and must be rejected on a motion for summary judgment. A different result, however, must obtain as to the other two arguments and summary judgment will enter for defendant.

■ Generally the law looks with disfavor on disclaimers of liability, *Willard Van Dyke Productions, Inc. v. Eastman Kodak Company*, 12 N.Y.2d 301, 239 N.Y.S.2d 337, 189 N.E.2d 693 (1963) but that does not mean, as plaintiffs suggest, that they will not be given effect in the proper case. *See, e. g., Hong Kong Export Credit Ins. v. Dun & Bradstreet*, 414 F.Supp. 153 (S.D.N.Y. 1975); *Ciofalo v. Tanney*, 10 N.Y.2d 294, 220 N.Y.S.2d 962, 177 N.E.2d 925 (1961).

Where, as here, the language and intent of the disclaimer is clear and unequivocal, *Michnick v. Garden Ice Skating Club, Inc.*, 28 A.D.2d 898, 281 N.Y.S.2d 953 (2d Dep't 1967), the parties were on notice of the disclaimer prior to entering the transaction, the disclaimer was not forced on one party to the bargain by the other, *Hong Kong Export Credit Ins. v. Dun & Bradstreet*, 414 F.Supp. 153 (S.D.N.Y.1975), and the disclaimer was common in the type of transaction under consideration and was to be expected by ordinary custom, *Weisz v. Parke-Bernet Galleries, Inc.*, 77 Misc.2d 80, 351 N.Y.S.2d 911 (App.Term, 1st Dep't 1974), there is no reason to reject the disclaimer.

The instant case fits into each of these classifications. The plaintiff urges that the disclaimer does not specify that there would be no liability for negligence, gross negligence or wilful misconduct. This case does not involve gross negligence or wilful misconduct for which defendant might be liable despite the exculpatory clause, *Hong Kong Export Credit, supra*, at 160, other than the words used by plaintiff in its totally unsupported argument. Almost two years of discovery should have produced something factual; not airy allegations or invitations to speculation.

■ It is true that the disclaimer does not use the word "negligence". Rather, the disclaimer provides, in part: "[w]e do not assume any legal liability due to misinformation given our inspector, nor for inaccuracies, human error, etc. . . ." Exhibit 8, Defendant's Booklet of Exhibits. A recent decision of the New York State Court of Appeals indicates that the use of the word "negligence" is preferable. Yet, the court in that case said "that does not mean that the word 'negligence' must be employed for courts to give effect to an exculpatory agreement; however, words conveying a similar import must appear".

*Gross v. Sweet d/b/a Stormville Parachute Center*, 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306 (1979). Certainly, the above language is similar to, if not more encompassing than, "negligence". Moreover, when the parties are business entities negotiating at arm's length, less precise language is acceptable if it evinces the unmistakable intent of the parties. *Id.* Thus, defendant's failure to use the preferable language does not render its disclaimer ineffective.

Clearly the intent of the parties was not that the defendant inspection company would accept part of the risk of loss insured by the plaintiff for the minimal fee paid for the inspection and report. The plaintiffs here were on notice of the disclaimer prior to ordering the inspection. To suggest, as plaintiffs do, that the defendant forced the plaintiffs to bargain at a disadvantage because all of the various inspection services used such disclaimers is of little help to plaintiffs since it merely indicates that such disclaimers were common and customary. Plaintiffs could have elected to conduct the necessary inspection themselves or to bargain with the defendant for a comprehensive inspection at a higher fee without a disclaimer. To argue that plaintiffs were in an inferior bargaining position with reference to the disclaimer provision is to ignore reality.

The plaintiffs' reliance on *Willard Van Dyke Productions v. Eastman Kodak Co.,* supra, is misplaced. In that case the Kodak Company attempted to avoid liability for negligence in the processing of certain film by a disclaimer printed on the box containing the unexposed film at the time of sale. The decision of the New York Court of Appeals is particularly grounded upon the finding:

> . . . the label on which the provision appears accompanied the sale of the film and expressly recited that "FILM PRICE DOES NOT INCLUDE PROCESSING." It was reasonable, therefore, to conclude that the processing of the film was to constitute a transaction entirely separate and distinct from [the] sale. 12 N.Y.2d at

304, 239 N.Y.S.2d at 340, 189 N.E.2d at 695.

The case at bar is a far cry from the *Kodak* case for here the disclaimer is part and parcel of the report which the plaintiff purchased from defendant.

Summary judgment must also be granted for the defendant based on its first argument; to wit, because the plaintiffs could not have cancelled the coverage between the receipt of the inspection report and the date of the loss. The policy had a sixty day cancellation clause. The inspection report from the defendant was received by the plaintiffs on February 8, 1977. Sixty days after the receipt of the report was April 8, 1977. The loss occurred on March 14, 1977.

Defendant argues that even if the report had been accurate, the plaintiffs had no right to cancel until April 8, 1977. The plaintiffs, however, argue that the underwriter "*would* have sought an endorsement removing the flood exposure at the Oneonta location and that, [in the opinion of the underwriter] he would have been successful in so doing." Plaintiffs' Memorandum, at 11. The plaintiffs contend that this speculative opinion raises a question of fact for a jury. It would appear that if this is permitted, there could never be a grant of summary judgment. Such an ephemeral question could be raised in almost every case. That certainly is not the intent of the rule. The defendant is, "absent proof to support plaintiffs' claim, . . . entitled to protection against the heavy burden and expense of a protracted trial." *Miller v. Schweickart*, 413 F.Supp. 1062, 1069 (S.D.N.Y.1976).

Settle judgment on five days' notice.