# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

Nos. 09-2008/2273

———————

| | |
|---|---|
| Praetorian Insurance Company f/k/a Insurance Corporation of Hanover, | \* |
| | \* |
| | \* |
| Appellant, | \* |
| | \* Appeal from the United States |
| v. | \* District Court for the Western |
| | \* District of Missouri. |
| Site Inspection, LLC, | \* |
| | \* |
| Appellee. | \* |

———————

Submitted: January 14, 2010
Filed: May 3, 2010

———————

Before GRUENDER and SHEPHERD, Circuit Judges, and LANGE,[1] District Judge.

———————

SHEPHERD, Circuit Judge.

Praetorian Insurance Company ("Praetorian") appeals the district court's[2] grant of summary judgment and award of attorney's fees in favor of Site Inspection, LLC ("Site"). We affirm.

———————

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

I.

Praetorian provides property insurance to hotels nationwide. Jerry Mayo, Praetorian's property insurance underwriter, has final underwriting authority for all of the policies issued under Praetorian's "American E&S-KIS Hospitality Program" (the "program"). Under the program, Mayo reviews property applications and issues "initial binders" upon approval of an application. (Appellant's Br. 5.) Policies are then issued by Praetorian, "conditioned on a satisfactory loss control inspection of the insured property." (Id.) Klein Insurance Services, Inc. ("Klein"), a producer and wholesale broker, acts as Praetorian's agent, and retains inspection companies to inspect the properties. The inspection companies issue inspection reports, which include recommendations on how the property could reduce potential risk factors. Praetorian then sends these recommendations to the property owner and if the property owner adequately complies with the recommendations, Praetorian issues a final policy insuring the property.

In 2003, Praetorian issued a conditional policy under the program, covering Vantage Investments, Inc.'s ("Vantage") Best Western hotel at 5701 Longview Road in Kansas City, Missouri. For $245.00, Klein retained Site to inspect the Best Western property.[3] During an initial meeting regarding Site's inspection of the Best Western property, Site showed Klein its default inspection report template.[4] Located at the bottom was a disclaimer of liability provision (the "provision") which Site included on all 70 inspection reports Site completed for Klein. The provision stated:

---

[3]Site's inspectors do not physically test equipment. Site's responsibility is to locate equipment, assess risk of loss, and make the appropriate suggestions for a property to reduce risk factors.

[4]One of Site's services allows companies to customize a template for inspection reports.

This report contains information for underwriting analysis only and should be used for no other purpose. While this report was completed as accurately as possible, Site Inspection[], LLC does not assume any legal liability arising from any inaccuracies found to be contained within this report. Furthermore, the requesting company, their representatives and reinsures hold Site Inspection[], LLC harmless from any claims or liabilities arising out of any decisions or actions made based on information developed in this report.

(Appellant's Br. 7.) Klein negotiated several revisions to the report template but never requested removal of the provision. In fact, during the revision process, a Klein employee wrote "ok" next to the provision.

Site inspected the Best Western and using the final inspection report template as negotiated, Site issued its report—each page of which contained the provision at the bottom. The report included several recommendations for reducing risks at the Best Western. At Klein's request, Site removed several of the recommendations in the report. On January 5, 2004, Site submitted a new report containing a total of ten recommendations for the Best Western and Vantage was provided an opportunity to comply with the ten recommendations in order to maintain Praetorian's insurance coverage. On March 16, 2004, Regional Reporting, Inc. performed a "recommendation check" and confirmed that Vantage had complied with all of Site's recommendations. Pursuant to this finding, Praetorian continued their coverage of Vantage's Best Western hotel.[5]

On August 10, 2004, a fire occurred at the Best Western. Praetorian retained Poole Consulting Services, Inc. ("Poole") and paid them approximately $3,784 to investigate the Best Western's fire protection systems. Poole assigned the job to Brian

---

[5]On March 20, 2004, three months after Site's inspection, Campbell Fire Protection, LLC ("Campbell") conducted the hotel's annual fire alarm inspection. During that inspection, Campbell found that the hotel's overall fire protection equipment was operational.

Olsen, a fire protection specialist. During his investigation, Olsen inspected the property and reported several inadequacies with the hotel's fire protection systems. However, Olsen acknowledged that he had no way of knowing if these inadequacies existed when Site had performed the inspection prior to the fire.

Based on Olsen's findings, Praetorian refused Vantage's claim for the damage to the Best Western, but eventually paid Vantage $3.25 million pursuant to a settlement agreement.[6] During a deposition in the Vantage litigation, Mayo stated that he thought Site's inspection of the Best Western had been satisfactory. Praetorian then brought this lawsuit against Site, seeking reimbursement for the $3.25 million paid to Vantage and alleging that it would not have issued the policy to Vantage if Site had correctly informed Praetorian of the various inadequacies[7] in the hotel's fire protection systems. Outside of the pleadings, Site demanded indemnification from Praetorian "for any and all attorney fees and expenses" incurred in its defense or any potential prosecution of a counterclaim. When Praetorian did not comply with the indemnification request, Site counterclaimed, alleging common law contractual indemnity and breach of contract for Praetorian's breach of the provision in Site's inspection report.

---

[6] Notably, Vantage submitted a claim for only $1,092,570.80.

[7] Overall, Praetorian alleged a total of 12 inadequacies, all based on the report by Olsen. These inadequacies included: (1) the lack of a "[c]entral [s]tation fire alarm;" (2) the absence of a "central station sprinkler system;" (3) the "sprinkler heads were corroded and inoperable;" (4) a fire pump was "tagged with four failure notices;" (5) "the key to the fire alarm system was set on reset mode and was not on;" (6) "the fire alarm system was inoperable;" (7) "the smoke detectors that were hooked up to the annunciator panel were not hooked into the fire alarm system;" (8) "there was no smoke detector in the kitchen;" (9) "the fire alarm system's manual pulls" were malfunctioning; (10) "the sprinklers in the basement . . . did not function properly;" (11) "there was no service contract with any monitoring service to monitor the fire alarm system;" and (12) "the Hotel's fire protection systems were not in compliance with NFPA regulations." (Am. Compl. ¶¶ 11-13.)

On July 17, 2008, Site sent Praetorian Requests for Admissions which included requests for Praetorian to admit that it had never refused to issue a policy, nor cancelled a policy, due to the fire protection inadequacies Praetorian had alleged in its complaint. When Praetorian failed to respond, the district court ordered Praetorian's response by September 3, 2008. Praetorian responded and objected to many of the requests, and Site moved to determine the sufficiency of Praetorian's responses pursuant to Federal Rule of Civil Procedure 36.[8] On December 17, 2008, the district court found that all of Praetorian's responses were insufficient and argumentative, and deemed all requests admitted.[9]

Site filed a motion for summary judgment on Praetorian's claims and its own counterclaims. Praetorian filed a motion for partial summary judgment on its own claims. In support of its motion, Praetorian submitted an affidavit from Mayo which reflected that he would have cancelled Vantage's policy had Site's report been more accurate.

The district court (1) granted Site's motion for summary judgment on Praetorian's claims, finding that no genuine issue of material fact existed as to whether Praetorian would have cancelled Vantage's policy had Site reported the inadequacies, (2) denied Praetorian's cross motion for summary judgment on its own claims, and (3) granted Site's motion for summary judgment on its counterclaims. The court found that "Site's exculpatory clause and indemnity provision are enforceable contractual provisions that relieve Site from any liability." (D. Ct. Or. 24.) Site moved for damages on its counterclaim and the district court awarded Site $379,520.12 in damages, attorney's fees, and costs. Praetorian appeals.

---

[8]Under Rule 36, "[t]he requesting party may move to determine the sufficiency of an answer or objection [to Requests for Admissions]. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. Pro. 36(a)(6).

[9]Praetorian did not appeal this order.

We review the grant of summary judgment de novo. Thomas v. Union Pac. R.R., 308 F.3d 891, 893 (8th Cir. 2002). "Summary judgment is appropriate if the evidence, considered in the light most favorable to the nonmoving party, fails to raise a genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Thompson v. United Transp. Union, 588 F.3d 568, 572 (8th Cir. 2009).

A.

Praetorian first alleges that the district court improperly granted Site's motion for summary judgment on Praetorian's claims because a genuine issue of material fact exists as to whether Praetorian would have cancelled Vantage's policy had Site's report identified the inadequacies in the Best Western's fire protection system. However, Praetorian's Rule 36 admissions included admissions that Praetorian had never cancelled any of its policies based on any of the alleged inadequacies that existed in Site's report. The only substantial evidence that Praetorian introduced to refute these Rule 36 admissions was the affidavit from Mayo, which directly contradicts Mayo's prior testimony that Site's inspection was "satisfactory."

"[A]s a general rule, admissions made in response to a Rule 36 request for admissions are binding on that party." Bender v. Xcel Energy, Inc., 507 F.3d 1161, 1168 (8th Cir. 2007) ("Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." (citing Fed. R. Civ. P. 36(b))). "Affidavits and depositions entered in opposition to summary judgment that attempt to establish issues of fact cannot refute default

admissions."[10] <u>United States v. Kasuboski</u>, 834 F.2d 1345, 1350 (7th Cir. 1987) (finding that default admissions under Rule 36 can serve as a "factual predicate for summary judgment"); <u>see also</u> <u>Cornerstone Bible Church v. City of Hastings</u>, 948 F.2d 464, 469-70 (8th Cir. 1991) ("The City's affidavits are conclusory and speculative, pointing only to potential secondary effects without the benefit of any study or factual support.").

Mayo's affidavit is self-serving, containing merely his own perspective in hindsight of the procedures that Praetorian should have implemented, contradicts his prior testimony, and is not enough to raise a genuine issue of material fact. <u>See</u> <u>Mut. Marine Office, Inc. v. Atwell, Vogel & Sterling, Inc.</u>, 485 F. Supp. 351, 355 (S.D.N.Y. 1980) (finding that a statement from an insurance underwriter that he would have sought to cancel an insurance policy had the inspection report stated something different was "speculative opinion" and that summary judgment was still appropriate). "It would appear that if this [action were] permitted, there [would] never be a grant of summary judgment. Such an ephemeral question could be raised in almost every case. That certainly is not the intent of the rule." <u>Id.</u> (quotation omitted). We therefore conclude that the district court's grant of summary judgment to Site on Praetorian's claims is proper.

## B.

Praetorian next claims that the district court improperly granted Site's motion for summary judgment based on the disclaimer of liability provision. Specifically, Praetorian alleges that the language in the disclaimer of liability provision does not

---

[10]"A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. . . . [T]he court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). Here, Praetorian did not make any such motion.

constitute a valid indemnification clause.[11]  Praetorian first argues that the provision was not incorporated into the inspection contract with Site.[12]  In its Rule 36 admissions, Praetorian admitted that the inspection report underwent several revisions, that Klein made alterations to the report, that the provision remained during every revision, that Klein wrote "ok" next to the provision, and that the final draft of the report contained the provision.  The issue, therefore, is not whether the provision was part of the inspection contract, but only whether the provision included a valid indemnification clause.

"Missouri law controls in this diversity case action.  We review the district court's interpretation of Missouri law de novo."  Bass v. Gen. Motors Corp., 150 F.3d 842, 846-47 (8th Cir. 1998) (citations omitted).  An "indemnity clause," "[a]lso termed hold-harmless clause [or] save-harmless clause," is "[a] contractual provision in which one party agrees to answer for any specified or unspecified liability or harm that the other party might incur."  Black's Law Dictionary 784 (9th ed. 2009).  An indemnity clause must clearly express that one party is releasing the other from his own negligence and requires precise language.  See Util. Serv. & Maint., Inc. v. Noranda Aluminum, Inc., 163 S.W.3d 910, 913 (Mo. banc 2005) ("[C]ontractual provisions releasing a party from liability for its own negligent acts must be stated clearly, unequivocally, and conspicuously."); see also Nusbaum v. City of Kansas City, 100 S.W.3d 101, 105 (Mo. banc 2003) (per curium) ("A contract of indemnity will not be construed so as to indemnify one against loss or damage resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms.").

---

[11]Praetorian also argues that the district court improperly granted Site's motion for summary judgment regarding its exculpatory clause.  Because we have affirmed the district court's grant of Site's motion for summary judgment on Praetorian's claims against Site, we need not address the exculpatory clause issue.

[12]Although the inspection contract was officially negotiated between Klein and Site, it is undisputed that Klein was acting as Praetorian's agent when it hired Site.

Missouri has recognized an exception to this requirement, distinguishing "between contracts with consumers and contracts between businesses of equal power and sophistication." Util. Serv., 163 S.W.3d at 913. Sophisticated business parties require less precision in the terms of the indemnity clause, and it is irrelevant whether the businesses bargained for the provision. See id. at 913-14 ("Courts enforce the objective terms of contracts between sophisticated businesses, without regard to the parties' subjective intent. The character and quality of negotiations do not vary the terms of a written contract between sophisticated businesses." (citations omitted)). As sophisticated business parties, Klein's indemnification of Site did not require this precise language, and Site's provision, stating that "the requesting company, their representatives and reinsures hold Site Inspection[], LLC harmless from any claims or liabilities arising out of any decisions or actions made based on information developed in this report," (Appellant's Br. 7), is adequate. See id. at 914 ("There is nothing ambiguous about a requirement that one party indemnify the other for 'any and all claims' in a commercial contract.").

Additionally, the fact that Site was paid only $245.00 for the inspection is consistent with the Praetorian's agreement to indemnify Site. See id. at 914 ("[T]he economic reality is that the price of the work may well include the cost of insurance for [one party] to indemnify [the other party] for 'any and all claims.' A contract between sophisticated businesses that does not include indemnification would presumably carry a different price than a contract that does include such a provision."). Therefore, we find that Site's provision contained an enforceable indemnification clause.

Praetorian next argues that this particular indemnification clause is unenforceable because this case does not involve a third-party claim. Although indemnification suits generally arise in the context of third-party claims, Missouri law[13] does not require it. Cf. Safeway Stores, Inc. v. City of Raytown, 633 S.W.2d

---

[13]"If the Missouri Supreme Court has not yet addressed a particular issue, we may consider relevant state precedent, analogous decisions, considered dicta, . . . and

727, 729-32 (Mo. banc 1982) (holding that Missouri law does not require claims for indemnification and contribution be brought initially as third-party claims in the context of joint tortfeasors); Lee v. Investors Title Co., 241 S.W.3d 366, 367-68 (Mo. Ct. App. 2007) (upholding an indemnity clause that granted attorneys fees in a direct suit between a builder and a title company).

Here, the "plain language of the provision" clearly states that, "the requesting company," Praetorian through Klein, is responsible for indemnification of Site for "any claims or liabilities arising out of" Site's report. See Litton Microwave Cooking Prods. v. Leviton Mfg. Co., 15 F.3d 790, 796 (8th Cir. 1994) (applying Minnesota law and finding that "[o]nly a strained reading could produce the third-party suit requirement that Leviton would have us impose on the indemnity clause. Such a construction would produce the odd result of paying Litton's attorney's fees [under the indemnification clause] if, but only if, Litton waited to be sued by consumers for the damage resulting from the breach of warranty. The plain language of the provision does not appear to demand such a circumstance."). This unusual situation is similar to that in Litton in that, under any other interpretation of the provision, Site could never be indemnified unless another party sued Site for the inspection it performed for Praetorian. Therefore, we find that the indemnification clause was enforceable in this case, despite the absence of a third-party action.

Finally, Praetorian claims that the absence of the words "attorney's fees" from the provision inhibits their recovery by Site. Although Missouri courts generally "construe ambiguities in contracts against those who draft them," Transit Cas. Co. in Receivership v. Certain Underwriters at Lloyd's of London, 963 S.W.2d 392, 398 (Mo. Ct. App. 1998), Missouri law authorizes the award of attorney's fees when not specified in certain unique situations. See City of Grandview, Mo. v. Hudson, 377

---

any other reliable data. Decisions from Missouri's intermediate appellate court (the Missouri Court of Appeals) are particularly relevant, and must be followed when they are the best evidence of Missouri law." Bockelman v. MCI Worldcom, Inc., 403 F.3d 528, 531 (8th Cir. 2005) (quotations omitted).

F.2d 694, 697-98 (8th Cir. 1967) (applying Missouri law and stating, "there is sound authority that the indemnitee . . . is entitled to recover from the indemnitors, as a part of its damages, reasonable attorney fees which [the indemnitees] incurred in defending a suit brought against it in reference to the matters against which it was indemnified. This is so even though the indemnity agreement does not specifically include or mention 'attorney fees.'"); see also Sears, Roebuck & Co. v. Peerless Prods., Inc., 539 S.W.2d 768, 770 (Mo. Ct. App. 1976) (allowing reimbursement of litigation expenses when the indemnity clause stated, "By the acceptance of this order you agree to protect and indemnify said customer and Sears, Roebuck and Company from all claims or demands on account of injury to persons or property occurring during or as a result of said installation."). Site's situation was clearly one of these unique circumstances where attorney's fees are not specified in the contract, but where Site was "defending a suit brought against it in reference to the matters against which it was indemnified." City of Grandview, 377 F.2d at 697. Therefore, we find that the attorney's fees were properly awarded to Site.

## III.

For the foregoing reasons, we affirm.

_____