# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-1825

_____

|  |  |  |
|---|---|---|
| Monarch Fire Protection District of St. Louis County, Missouri, | * | |
| | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Freedom Consulting & Auditing Services, Inc.; Brett Turner; Karen Indellicati, also known as Karen Rittinger, also known as Karen Indellicati Rittinger, also known as Karen A. Rittinger, | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: January 13, 2011
Filed: July 7, 2011 (Amended July 7, 2011)

_____

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Monarch Fire Protection District of St. Louis County, Missouri, appeals several adverse rulings in favor of Freedom Consulting & Auditing Services, Inc., Brett

Turner, Freedom's owner, and Karen Indellicati, a Freedom employee. We affirm the district court.[1]

I.

The International Association of Firefighters Local 2665 (the "Firefighter Union") represents Monarch's employees. The Firefighter Union requested an independent audit of Monarch's self-funded group health plan because union representatives believed that Monarch's board of directors had illegally approved a non-covered medical procedure for a plan member.

Monarch hired Freedom to conduct the audit.[2] In order to provide Freedom with the information necessary to audit the health plan, Monarch was required under the privacy restrictions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA) to execute a contract with Freedom in which Freedom agreed to safeguard "protected health information" (PHI) it received. See 45 C.F.R. § 164.502(e)(1)(i) (providing that an entity covered by HIPAA may disclose PHI to a third party that agrees to "appropriately safeguard the information"). Accordingly, the parties executed the "Business Associate Agreement" (BAA), which prohibited Freedom from disclosing PHI to third parties.

Indellicati conducted the audit for Freedom, and Monarch provided her with copies of documents, including claim documents, medical bills, medical records, and reports of paid claims that contained plan member PHI. See 45 C.F.R. § 160.103 ("Protected health information means individually identifiable health information[.]").

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

[2]Monarch initially hired Independent Insurance Auditing Services, Inc., which has since been purchased by Freedom.

Indellicati generated a "Public Audit Report," which contained aggregate data with no unique identifiers, and a "Privileged Supplement," which contained plan member PHI in the form of medical claims of individual plan members, whether the claim was approved or denied, and corresponding medical records.

Indellicati shared the Public Audit Report and Privileged Supplement with Firefighter Union attorneys. One of the union attorneys disclosed them to St. Louis County law enforcement, and a criminal investigation ensued. Freedom was served with a subpoena for the complete audit. In accordance with the BAA, Freedom notified Monarch of the subpoena and turned over the audit documents to law enforcement.

Monarch asked Freedom to return the documents it had received in the course of performing the health care plan audit. Freedom refused because of the ongoing criminal investigation. Monarch responded with a letter asserting that Freedom had violated the BAA and terminating the contract.

Monarch sued Freedom, Indellicati, and Turner, alleging that PHI had been improperly disclosed to Firefighter Union attorneys in violation of the BAA. Specifically, Monarch filed: (1) a claim for breach of contract or rescission against Freedom; (2) claims for conversion against Freedom, Indellicati, and Turner; and (3) a request for a mandatory injunction requiring the return of all documents containing PHI that Freedom received for purposes of conducting the audit. Monarch also sought to recover attorneys' fees and costs that it incurred in responding to St. Louis County's criminal investigation into the allegations of wrongdoing made in the Privileged Supplement, in representing its directors during the criminal investigation, and in the litigation between the parties.

Complying with pre-trial discovery requests, Freedom returned some of the PHI documents, but it retained copies of the Privileged Supplement, as well as certain

emails and other electronic files containing PHI. Monarch moved for sanctions after Indellicati's deposition revealed that she had destroyed her computer's hard drive, which Monarch alleged contained information relevant to the litigation. The district court withheld its ruling on the motion until the case proceeded to trial, but it noted that the probable sanction for Indellicati's actions would be an adverse inference instruction to the jury.

Monarch filed a motion for summary judgment, as did Freedom, Turner, and Indellicati. The district court granted summary judgment in favor of Monarch on its breach of contract claim. It granted summary judgment in favor of Freedom, Turner, and Indellicati on Monarch's conversion claims. In addition, the district court held that Monarch was not entitled to attorneys' fees or costs that it incurred in responding to St. Louis County's criminal investigation into the allegations of wrongdoing made in the Privileged Supplement or in the litigation between the parties. The court did, however, conclude that Monarch's claim for attorneys' fees in representing its directors during the criminal investigation survived summary judgment, and the parties subsequently settled the claim. The district court also rejected Monarch's claim for punitive damages as moot given the dismissal of the conversion claims. The district court granted Monarch's requested injunctive relief and ordered Freedom to return any documents containing PHI that Freedom had retained. Monarch's motion for sanctions was dismissed in an order issued by the district court summarily rejecting all pending motions in the case as moot.

Monarch appeals the district court's dismissal of its conversion claim and underlying claim for punitive damages, the district court's decision that the BAA's indemnity clause did not entitle Monarch to attorneys' fees and costs, and the district court's denial of its motion for sanctions.

II.

We review a district court's grant of summary judgment de novo. Anderson v. Durham D & M, L.L.C., 606 F.3d 513, 518 (8th Cir. 2010). We will affirm the grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

First, Monarch contends that the district court erred in dismissing its conversion claim. Under Missouri law, a copy of a document cannot be converted where the owner has not been deprived of possession of the property or prevented from utilizing the property. Riley v. L.J. Schuster Co., 844 S.W.2d 521, 523 (Mo. Ct. App. 1992). Here, the undisputed facts show that Monarch had access to the relevant documents at all times and that Freedom merely retained copies. Accordingly, Monarch cannot show that Freedom deprived it of the right to possession, which it must do to establish conversion under Missouri law. JEP Enters., Inc. v. Wehrenberg, Inc., 42 S.W.3d 773, 776 (Mo. Ct. App. 2001).[3]

Second, Monarch argues that the district court erred in determining that the BAA's indemnity clause did not obligate Freedom to pay Monarch's attorneys' fees and costs incurred in suing Freedom and in responding to St. Louis County's criminal investigation into the allegations of wrongdoing made in the Privileged Supplement. We review de novo issues of contract interpretation, including the construction of indemnity clauses. In re Fitzgerald Marine & Repair, Inc., 619 F.3d 851, 858 (8th Cir. 2010).

Monarch contends that the indemnity clause of the BAA authorizes it to recover attorneys' fees incurred in the litigation between the parties and in responding

---

[3]Because we conclude that Monarch's conversion claim fails as a matter of law, we do not address Monarch's dependent argument regarding punitive damages.

to St. Louis County's criminal investigation into the allegations of wrongdoing made in the Privileged Supplement. The indemnity clause of the BAA provides:

> [Freedom] will indemnify and hold harmless District and Plan and any District or Plan affiliate, trustee, officer, director, employee, volunteer or agent from and against any claim, cause of action, liability, damage, cost or expense, including attorneys' fees and court or proceeding costs, arising out of or in connection with any unauthorized use or disclosure of PHI or any failure in security measures affecting PHI or any other breach of the terms of this Agreement by [Freedom] or any person or entity under [Freedom]'s control.

Missouri follows the American Rule on attorneys' fees, which provides that each party to litigation must pay its own litigation expenses unless a statute specifically authorizes recovery of attorneys' fees or a contract provides for them. Lucas Stucco & EIFS Design, LLC v. Landau, 324 S.W.3d 444, 445 (Mo. 2010) (en banc). We first consider whether the indemnity clause entitles Monarch to attorneys' fees incurred in the litigation between the parties where the indemnity clause does not expressly refer to litigation between the parties. Although the Missouri Supreme Court has not addressed this issue specifically, the Court has held that in order for a party to recover attorneys' fees incurred in enforcing its right to indemnity under a contract, the indemnity clause at issue must expressly refer to the enforcement of the right to indemnity. Nusbaum v. City of Kansas City, 100 S.W.3d 101, 109 (Mo. 2003) (en banc) (per curiam). Because both the enforcement of the right to indemnity under a contract and the enforcement of rights in general under a contract involve litigation between the contracting parties, we find the Nusbaum decision analogous to the issue here.[4] Accordingly, we think the Missouri Supreme Court would require

___

[4]"If the Missouri Supreme Court has not yet addressed a particular issue, we may consider relevant state precedent, analogous decisions, considered dicta, and any other reliable data." Praetorian Ins. Co. v. Site Inspection, LLC, 604 F.3d 509, 516 n.13 (8th Cir. 2010) (quotation omitted).

an indemnity clause to contain express language referencing litigation between the parties before interpreting it to allow a party to recover attorneys' fees incurred in an action asserting its rights under the contract.  Id.; see also Lee v. Investors Title Co., 241 S.W.3d 366, 368 (Mo. Ct. App. 2007) (holding that a trial court must award attorneys' fees when an indemnity clause expressly provides for an award of attorneys' fees in enforcing rights under the contract); Weitz Co., L.L.C. v. MacKenzie House, L.L.C., No. 07-0103-CV-W-ODS, 2010 WL 1839118, at *2 (W.D. Mo. May 6, 2010) (holding that a party was entitled to attorneys' fees under an indemnification clause because the clause expressly provided for recovery if it became "necessary for either party to institute legal proceedings against the other party" to enforce the terms of the contract).

An express language requirement not only comports with the Nusbaum decision, it also squares with the "cardinal principle" of contract interpretation, which "is to ascertain the intention of the parties and to give effect to that intent."  Dunn Indus. Grp., Inc. v. City of Sugar Creek, 112 S.W.3d 421, 428 (Mo. 2003) (en banc) (per curiam); see also In re Binghamton Bridge, 70 U.S. 51, 76 (1865) ("For it should never be lost sight of, that the main canon of interpretation of a contract, is to ascertain what the parties themselves meant and understood.").  Indemnity suits ordinarily arise in the context of third-party claims.  See Praetorian Ins. Co. v. Site Inspection, LLC, 604 F.3d 509, 516 (8th Cir. 2010).  Absent language expressly requiring the payment of attorneys' fees incurred in litigation between the parties, the non-drafting party may be unaware that by agreeing to cover the drafting party's attorneys' fees arising from a claim for indemnity, it is actually assenting to cover attorneys' fees the other party incurs in suing for breach of the agreement.  In addition, an express language requirement reflects the American Rule's longstanding policy against substantive fee-shifting as part of a merits award.  See Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist., 103 F.3d 1422, 1437 (8th Cir. 1997) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 59 (1991) (Scalia, J., dissenting)).

Turning to the indemnity clause in the BAA, because it contains no express language requiring Freedom to pay Monarch's attorneys' fees and costs in the event of litigation between the parties, we agree that Freedom is not contractually obligated to pay the attorneys' fees and costs that Monarch incurred in this litigation. In this case, the structure of the agreement also supports the district court's conclusion. The contract uses identical language to trigger Freedom's obligation to indemnify Monarch under paragraph 7.H(i) and to trigger Freedom's obligation to defend Monarch under paragraph 7.I(1). Paragraph 7.I(1) provides that if Monarch "is named a party in <u>any</u> judicial, administrative or other proceeding <u>arising out of or in connection with any unauthorized use or disclosure of PHI</u>," then Monarch has the option to tender its defense to Freedom, and Freedom must provide attorneys to represent Monarch's interests. But it would be nonsensical to construe paragraph 7.I(1) to include a lawsuit between Monarch and Freedom, because then Freedom could be required to provide attorneys to represent Monarch's interests in a lawsuit against Freedom. <u>See</u> <u>Hooper Assocs., Ltd. v. AGS Computers, Inc.</u>, 548 N.E.2d 903, 905 (N.Y. 1989). The same language typically should be given the same meaning in neighboring paragraphs of a contract, <u>Maupin v. S. Sur. Co.</u>, 220 S.W. 20, 21 (Mo. Ct. App. 1920), and it follows that the duty to indemnify in paragraph 7.H(i), like the duty to defend in paragraph 7.I(1), does not apply to actions between the parties. <u>See</u> <u>Oscar Gruss & Son, Inc. v. Hollander</u>, 337 F.3d 186, 199-200 (2d Cir. 2003).

We also conclude that Monarch cannot survive summary judgment on its claim that the indemnity clause entitles it to the attorneys' fees it incurred in preparing a response to the Privileged Supplement. The indemnity clause requires Freedom to pay attorneys' fees "arising out of or in connection with" any unauthorized disclosure of PHI, and Monarch contends that Freedom's disclosure of PHI within the Privileged Supplement sparked the investigation that required it to prepare a response to the Privileged Supplement. The undisputed facts, however, show that Monarch authorized its attorney, Michael Bakewell, to prepare a response to the Privileged Supplement in November 2007, <u>see</u> Joint App'x at 899 ¶ 11, and that law

enforcement did not approach Bakewell about the criminal investigation until December 2007, <u>see</u> Joint App'x at 1643. Even if there is some nexus between the disclosure of PHI within the Privileged Supplement and the criminal investigation, there is no nexus between the disclosure of PHI and Monarch's decision to respond to the Privileged Supplement. The only conclusion supported by the record is that Monarch would have incurred the attorneys' fees at issue whether or not there was a criminal investigation.

Third, Monarch argues that the district court abused its discretion in denying Monarch's motion for sanctions. We accord the district court substantial deference in ruling on a motion for sanctions, and the court abuses its discretion only if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence. <u>Greyhound Lines, Inc. v. Wade</u>, 485 F.3d 1032, 1035 (8th Cir. 2007).

Here, the district court withheld ruling on Monarch's Rule 37 motion for sanctions until the case proceeded to trial, noting that the appropriate sanction for Indellicati's actions would likely be an adverse inference jury instruction. <u>See Stevenson v. Union Pac. R.R. Co.</u>, 354 F.3d 739, 746 (8th Cir. 2004) (holding that in order for an adverse inference instruction to be appropriate, "there must be a finding of intentional destruction indicating a desire to suppress the truth"). After the resolution of many of the claims on summary judgment and the subsequent settlement of the remaining claims by the parties, the district court simply dismissed all pending motions as moot. We cannot say the district court abused its discretion by declining to impose a sanction on Indellicati when the case did not proceed to trial because nothing in the record suggests that the district court based its ruling on a legal error or a clearly erroneous assessment of the evidence. <u>Greyhound Lines</u>, 485 F.3d at 1035.

III.

Accordingly, we affirm the decisions of the district court.

GRUENDER, Circuit Judge, concurring in part and dissenting in part.

I join all of the court's opinion except that part holding that the expansive terms of paragraph 7.H(i) do not entitle Monarch to the attorneys' fees that it incurred in successfully pursuing its breach-of-contract claim against Freedom and its claim for injunctive relief against all the defendants.

While under Missouri law each litigant generally must bear his attorney's fees, "[o]nce liability on a contract has been determined, damages in the form of attorney's fees permitted under the contract follow as a matter of law." *State ex rel. Chase Resorts, Inc. v. Campbell*, 913 S.W.2d 832, 835 (Mo. Ct. App. 1995). It is the task of this court, then, to determine whether the parties intended that paragraph 7.H(i) require Freedom to indemnify Monarch for the attorneys' fees incurred in successfully establishing the defendants' unauthorized disclosure of PHI. "In determining the parties' intent, the courts look to the language of the contract, giving the terms their plain, ordinary, and usual meaning and so construing the terms to avoid rendering other terms meaningless." *Stahlhuth v. SSM Healthcare of St. Louis*, 289 S.W.3d 662, 670 (Mo. Ct. App. 2009). Paragraph 7.H(i) bears repeating:

> [Freedom] will indemnify and hold harmless the District and Plan . . . from and against *any* claim, cause of action, liability, damage, *cost or expense, including attorneys' fees* and court or proceeding costs, *arising out of or in connection with any unauthorized use or disclosure of PHI* or any failure in security measures affecting PHI *or any other breach of the terms of this Agreement* by [Freedom] or any person or entity under [Freedom's] control.

-10-

(emphasis added). "'Arising out of' is a 'broad, general, and comprehensive' term ordinarily meaning 'originating from' or 'having its origin in', 'growing out of' or 'flowing from.'" *Beard v. Beard*, 723 S.W.2d 542, 544 (Mo. Ct. App. 1987) (quoting *Baca v. N.M. State Highway Dept.*, 486 P.2d 625, 628 (N.M. Ct. App. 1971)); *see also Schmidt v. Utils. Ins. Co.*, 182 S.W.2d 181, 183 (Mo. 1944). Thus, to the extent Monarch seeks the attorneys' fees incurred, first, in establishing that Freedom breached the BAA by disclosing PHI without authorization and, second, in enjoining the defendants to return the PHI, it seems plain that those expenses necessarily "arose out of" or were "in connection with" the defendants' "unauthorized . . . disclosure of PHI."

The opposite result reached by the court rests on its conclusion that Missouri law requires an indemnity clause to provide expressly for "litigation between the parties" before allowing a prevailing party to recover attorneys' fees incurred during inter-party litigation. *Ante*, at 7. In my view, such a talismanic requirement forsakes what the court rightly terms the "cardinal principle" of contract interpretation—"to ascertain the intention of the parties." *Ante*, at 7 (quoting *Dunn Indus. Grp. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003)). Moreover, the court's reasoning does little to persuade otherwise.

First, the court derives its special rule of contract interpretation from *Nusbaum v. City of Kansas City*, 100 S.W.3d 101 (Mo. banc 2003) (per curiam). In the court's view, the Missouri Supreme Court in *Nusbaum* announced a bright-line rule that "in order for a party to recover attorneys' fees incurred in enforcing its right to indemnity under a contract, the indemnity clause at issue must *expressly refer* to the enforcement of the right to indemnity." *Ante*, at 6 (emphasis added). Based on this reading, the court extrapolates that "the Missouri Supreme Court would require an indemnity clause to contain express language referencing litigation between the parties before interpreting it to allow a party to recover attorneys' fees incurred in an action asserting its rights under the contract." *Ante*, at 6-7. Because I disagree with

-11-

the court's characterization of *Nusbaum*'s reasoning, I likewise disagree with its extension of that reasoning in the present case. The court in *Nusbaum* did maintain that the legal expenses incurred in an indemnitee's action against its indemnitor fell outside the terms of the contract's indemnity clause, but it did not adopt the rule attributed to it by the court today. Far from rejecting the indemnitee's claim for legal expenses for want of the requisite magic words in the contract, the court in *Nusbaum* held that the award of legal expenses was not warranted because "nothing in the indemnification provision suggests that it provides for the recovery of legal expenses incurred in establishing the right to indemnity." *See* 100 S.W.3d at 109. The indemnity clause at issue in *Nusbaum* provided simply for recovery of damages, including legal expenses, arising out of the indemnitor's negligence. Hence, litigation concerning the parties' contractual duties fell outside the circumscribed terms of the indemnity clause. *Id.* In the present case, by contrast, the attorneys' fees to which I believe Monarch is entitled were incurred in a suit to establish and rectify the defendants' unauthorized disclosure of PHI. These expenses fall squarely within the plain language of paragraph 7.H(i), and *Nusbaum* in no way alters this outcome.

That *Nusbaum* did not lay the foundation for the framework constructed by the court today is further evidenced by a brief survey of state court and federal court applications of Missouri law in cases that bear considerable resemblance to the present one. In *RJF International Corp. v. B.F. Goodrich Co.*, 880 S.W.2d 366 (Mo. Ct. App. 1994), for instance, the Missouri Court of Appeals held that an indemnity clause entitled a prevailing party to legal expenses incurred in litigation against its contractual counterpart, *see id.* at 371-72, *cited with approval in Nusbaum*, 101 S.W.3d at 109, despite the absence of terms "expressly refer[ring]" to litigation between the parties, *see ante*, at 6. Likewise, in *Fortune Southfield Co. v. Kroger Co.*, 931 F.2d 1282 (8th Cir. 1991), this court held that an indemnity clause strikingly similar to the present one entitled the prevailing party to the legal expenses incurred in an inter-party suit. *See id.* at 1284 (applying Missouri law). And, finally, in *Praetorian Insurance Co. v. Site Inspection, LLC*, 604 F.3d 509 (8th Cir. 2010), we

-12-

held that yet another indemnity clause contemplated the shifting of attorney's fees incurred in inter-party litigation even though the clause did not refer specifically to litigation between the parties and, further, did not even mention attorney's fees. *See id.* at 515-16 (applying Missouri law). I see no reason why the indemnity clause at issue in the present case should beget a different result.[5]

Next, the court expresses concern that, because indemnity suits "ordinarily arise in the context of third-party claims," the "non-drafting party may be unaware that . . . it is actually assenting to cover attorneys' fees the other party incurs in suing for breach of the agreement" absent contractual terms expressly providing for shifting legal expenses incurred in inter-party litigation. *Ante*, at 7. Again, this position appears to be irreconcilable with that taken in *RJF International Corp.*, where the Missouri Court of Appeals interpreted an indemnity clause materially indistinguishable from paragraph 7.H(i) and held that "[t]he terms of the agreement are not limited to attorney's fees and costs incurred while defending against [third-party claims]." *See* 880 S.W.2d at 372; *see also Praetorian Ins. Co.*, 604 F.3d at 516 (remarking that "[o]nly a strained reading" of an indemnity clause could yield a third-party suit limitation absent language to that effect (quoting *Litton Microwave Cooking Prods. v. Leviton Mfg. Co.*, 15 F.3d 790, 796 (8th Cir. 1994))). Moreover, solicitude for non-drafting parties is lessened significantly in cases, such as this one, that involve "contracts between businesses of equal power and sophistication." *See Praetorian Ins. Co.*, 604 F.3d at 515 (quoting *Util. Serv. & Maint., Inc. v. Noranda*

---

[5] Additionally, the court's reliance on *Lee v. Investors Title Co.*, 241 S.W.3d 366 (Mo. Ct. App. 2007), and *Weitz Co. v. Mackenzie House, L.L.C.*, No. 07-0103, 2010 WL 1839118 (W.D. Mo. May 6, 2010), is misplaced. At most, these cases stand for the unremarkable proposition that an indemnity clause that expressly references litigation between the contractual parties is sufficient to entitle a prevailing party to the attorney's fees incurred in litigation between the contractual parties. The cases do not suggest that express language is *necessary* to such a result.

*Aluminum, Inc.*, 163 S.W.3d 910, 913 (Mo. banc 2005)).[6] Finally, by reading paragraph 7.H(i) to require that Freedom reimburse Monarch only in actions brought by third parties, the court renders superfluous a subsequent paragraph of the BAA. Paragraph 7.I(1) entitles Monarch to tender its defense to Freedom or undertake its own defense at Freedom's expense should Monarch be "named a party in any judicial, administrative or other proceeding arising out of or in connection with any unauthorized use or disclosure of PHI . . . or any other breach of the terms of [the BAA] by [Freedom]." As paragraph 7.I(1) expressly provides for Freedom's obligations in the event of third-party claims against Monarch, the court's redundant construction of the preceding paragraph "leaves [paragraph 7.I(1)] without function or sense." *See Dunn Indus. Grp.*, 112 S.W.3d at 428.[7]

_____

[6] To highlight the equivalency of bargaining power between the parties in this case, I note that Monarch, like Freedom, was subject to "mirror-image" indemnity obligations. *See* BAA ¶ 7.H(ii).

[7] The court maintains that the BAA "uses identical language to trigger Freedom's obligation to indemnify Monarch under paragraph 7.H(i) and to trigger Freedom's obligation to defend Monarch under paragraph 7.I(1)," and, thus, to read paragraph 7.H(i) to encompass inter-party litigation is to read paragraph 7.I(1) to do the same. Such a reading, in the court's view, would lead to a "nonsensical" result because "then Freedom could be required to provide attorneys to represent Monarch's interests in a lawsuit against Freedom." *Ante*, at 8. However, paragraph 7.H(i) and paragraph 7.I(1) include wholly different "triggers." Paragraph 7.H(i) triggers Freedom's obligation to indemnify whenever Monarch suffers *any* harm arising out of or in connection with Freedom's unauthorized disclosure of PHI. Paragraph 7.I(1), by contrast, is triggered only when Monarch is named a party in a proceeding arising out of or in connection with such unauthorized conduct. Thus, the notion that the two paragraphs have identical triggers—and, in turn, that interpreting paragraph 7.H(i) to contemplate inter-party suits requires an identical, "nonsensical" interpretation of paragraph 7.I(1)—belies the language of the paragraphs themselves. *Cf. Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989) (holding that an indemnity clause contemplated only third-party claims where an expressly coextensive provision permitted the indemnitor to "assume the defense of any such claim or litigation"). In addition, I am at a loss to conjure any reading of paragraph

-14-

Accordingly, I respectfully dissent from the court's holding that Monarch is not entitled to the attorneys' fees incurred in litigating its breach-of-contract claim and its claim for injunctive relief. In all other respects, I concur.

_____

---

7.I(1) that could require Freedom "to represent Monarch's interests in a lawsuit against Freedom." As noted above, paragraph 7.I(1) entitles Monarch to tender its *defense* to Freedom or undertake its own *defense* at Freedom's expense. Because Monarch inevitably would be cast in the role of plaintiff in an action brought against Freedom, any such dispute would fall well outside the terms of paragraph 7.I(1).